THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* SARAH C. LELAND, Appellant.

*Evidence improperly admitted, calling for a reversal of a judgment of conviction.*

It is an error which calls for the reversal of a judgment of conviction rendered upon the trial of a person under an indictment for larceny (where the articles alleged to have been wrongfully appropriated by the defendant were claimed by her to have been purchased out of the funds of a partnership existing between her and the complainant), to allow the People to put in evidence, over the objection of the defendant, the judgment roll in an action brought by the defendant against the complainant for the purpose of an accounting and of dissolving the partnership, which judgment decided that there never had been a partnership between the complainant and the defendant.

APPEAL by the defendant, Sarah C. Leland, from a judgment of the Court of General Sessions of the Peace in and for the city and county of New York, rendered on the 30th day of January, 1893, upon the verdict of a jury convicting the defendant of the crime of grand larceny in the second degree.

*Howe & Hummell*, for the appellant.

*Delancey Nicoll* and *Henry B. B. Stapler*, for the respondent.

PARKER, J.:

The defendant was convicted of larceny under section 528 of the Penal Code, which provides that:

" A person who, with the intent to deprive or defraud the true owner of his , property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person, * * *

" Having in his possession, custody or control as a bailee, servant, attorney, agent, clerk, trustee or officer of any person, association or corporation, or as a public officer, or as a person authorized by agreement, or by competent authority, to hold or take such possession, custody or control, any money, property, evidence of debt or contract, article of value of any nature or thing in action or possession, appropriates the same to his own use, or that of any other person other than the true owner or person entitled to the benefit thereof :

" Steals such property and is guilty of larceny."

The evidence presented by the People tended to establish that the defendant, while an employee of the complainant, acting under her authorization, and with her money purchased diamond earrings and a diamond crescent pin, which she delivered to complainant in 1885 or 1886, who took and retained them continuously in her possession until February 14, 1888. On that day complainant fell on the ice breaking her thigh. Defendant assisted in undressing her and took the diamonds from her person and carried them away.

Subsequently complainant spoke to the defendant about them, who said she had them, and had taken them for safe-keeping, in which arrangement the complainant at the time acquiesced.

Thereafter defendant had made a pair of imitation diamond earrings strongly resembling the genuine ones, and when complainant demanded the return of the jewels defendant sent to her the imitation earrings, promising to return the diamond pin later.

This she did not do, but retained it and the genuine diamond earrings in her possession.

Defendant's contention was that she was not an employee of the complainant when the diamonds were purchased, but her partner in

the conduct of a real estate and insurance business, and also in keeping a boarding house, which relation, she says, existed between them from about December, 1884, until October, 1888 ; that the diamonds were paid for partly with the partnership funds, partly with her own money, and partly with moneys of complainant; that they were purchased in defendant's name, the receipts being made out to, and the negotiations as well as the payments solely made by her.  The issue most strongly contested during the three days' trial was, whether there was a partnership from which was derived in part the money which paid for the diamonds.

During the time which elapsed between the alleged theft of the diamonds and the trial of the defendant now the subject of review, a civil action, instituted by this defendant for the avowed purpose of bringing about a dissolution of the partnership, and for an accounting, was tried at a Special Term, Mr. Justice BARRETT presiding, resulting in a judgment adjudging that there never was a partnership between complainant and defendant.

This judgment the prosecuting officer offered in evidence, and against the defendant's objection and exception the court received it.  Thus was presented to the jury the opinion and judgment of this learned judge upon the very question which they were invited to pass upon, without their having the benefit of knowing upon what evidence his conclusion was founded.  This may not be done in a criminal case.  (*Reg.* v. *Moreau*, 11 Q. B. 1028 ; Starkie on Evidence [10th ed.], § 331 ; Freeman on Judgments [4th ed.], § 319a, p. 575.)

Indeed, the learned counsel for the People does not contend that it was proper evidence on the part of the People, for the purpose of making out the charge alleged in the indictment, but he attempts to justify its admission in evidence on the ground that the defendant's counsel opened the door for its introduction by an inquiry of the complainant on cross-examination, whether defendant had not instituted such a suit in October, 1888.

The promptness with which the prosecuting officer followed up the inquiry of defendant's counsel, by introducing the judgment roll and questioning complainant touching the result of the suit, quite strongly suggests that he was becoming ·impatient over the delay of defendant's counsel in opening the door, and was thus led

to accept the first movement in that direction as such an opening. Assuming for the present that the inquiry had for its purpose the strengthening of defendant's position before the jury in respect to the alleged partnership, its utmost effect was to show that then, as now, defendant claimed the existence of the partnership.

So far as the inquiry went it nowhere suggested or permitted an inference that there had or would result therefrom a determination favorable to the defendant.

Evidence that she claimed to be a partner in October, 1888, whether shown by testimony that she then commenced a suit to dissolve the partnership, or otherwise, did not justify the People in attempting to introduce, nor furnish any legal basis for the introduction of, a judgment found and opinion expressed by a judge of such well-understood learning and experience that it could not have had other than an almost controlling weight with the jury in passing upon the question which it was defendant's right to have them decide upon the evidence presented at the trial.

Respondent urges that the charge of the court prevented it from doing the defendant harm, but we do not so read it. There was but one way open to the court for the correction of the error at that stage of the trial, and that was by an instruction to the jury that they wholly disregard the decision in the civil action. This it did not do.

On the contrary, the effect of the charge was to permit, if not require, them to regard it.

The court said : " There was a previous claim asserted upon the part of this defendant, that she was a partner of this complainant. The result of that action was that the defendant was beaten therein, but that does not at all preclude you from passing upon the question as to whether or not a partnership existed. You are not, in other words, precluded here by that adjudication." But the assumption so far indulged in, that the purpose of the defendant's counsel was to prove an assertion of the claim of partnership in October, 1888, is not, we think, justified by the record.

We quote the questions and answers immediately preceding the proof offered by the People to show how the suit terminated.

" Q. Now, let us get the dates of these suits she brought. Mrs. Leland brought a suit for a dissolution of the partnership when, in

what year? A. 1888. Q. What month? A. I think it was October. It was not tried, but I think it was October the action was commenced. Q. You have not any doubt about that, have you, that it was in October, 1888, the papers show it? A. Very little;. I think it was in October, but I did not look over it. Q. To the best of your recollection she brought a suit for a dissolution of the copartnership in October, 1888? A. Yes, sir. Q. You say the detention of this property, or larceny of this property — I use the word of the indictment — took place on the 14th of February, 1888, and you commenced a suit to restrain her from using your name in business when? A. I cannot tell exactly. Q. Wasn't it in the month of December, 1888? A. Probably. Q. And when did you have her arrested for this larceny? A. In February, I think. Q. February of what year? A. 1888; no, wait a moment — in March, I think, 1889, a year after. Q. You had her arrested for this larceny a year after? A. Yes, sir."

The purpose of the questions appears to have been to get before the jury the fact that it was long after the defendant refused to give up the diamonds, which was September 22, 1888, some months after defendant had in the immediate neighborhood commenced the same business as that conducted by the complainant, and still longer after defendant commenced a suit against complainant, that she first took the necessary steps towards bringing about a criminal prosecution of the defendant. And it was expected doubtless that the jury might infer that this prosecution was instituted either for the purpose of revenge or to bring about a favorable settlement of the other controversies. But had the evidence been offered for the purpose of showing that defendant in October, 1888, asserted claim of partnership, it would not have justified, as we have already observed, the introduction in evidence of the decision subsequently made.

The error is of such a substantial character that it calls for a reversal of the judgment and the ordering a new trial.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment reversed and new trial ordered.