IRELAND v. STATE.

Opinion delivered April 17, 1911.

1. EMBEZZLEMENT—DESCRIPTION OF FUNDS.—An indictment of a public officer for embezzlement of public funds is not defective, under Kirby's Digest, § 1994, in failing to describe the funds so embezzled. (Page 40.)

2. SAME—DUPLICITY.—Where the first count of an indictment charged defendant with embezzling public funds, and the second charged that he feloniously did convert such funds to his own use, and alleged that the same offense was charged, the two counts charged a single offense. (Page 42.)

3. SAME—INDICTMENT—SURPLUSAGE.—An indictment of an officer for embezzlement of public funds alleged that defendant *"did then and there fail and omit to pay over to his successor in office the money and funds aforesaid,* but then and there feloniously and fraudulently did convert the same to his own use and benefit." *Held,* that the clause italicized is surplusage. (Page 42.)

4. SAME—PROVING SETTLEMENT WITH COUNTY COURT.—In a prosecution of a county treasurer for embezzlement of county funds it is not competent for the State to introduce in evidence a judgment of the county court fixing the amount due by him to the county. (Page 42.)

5. SAME—REPEAL OF STATUTE.—In an indictment for embezzlement it was error to give in charge to the jury section 1842 of Kirby's Digest, such section having been repealed. (Page 44.)

6. SAME—INSTRUCTION.—Where an indictment of a county treasurer for embezzlement of county funds contained the superfluous statement that defendant failed to pay over certain funds to his successor in office, a charge that if accused was treasurer of the county and had in his possession funds belonging thereto and feloniously converted them to his own use or lent them or permitted another to use them, he should be found guilty, was erroneous and misleading, in connection with testimony that the funds had been loaned to banks, as the jury may have concluded that they were authorized to convict him for loaning the funds. (Page 45.)

7. SAME—INSTRUCTION.—In an indictment of a county treasurer for em-
bezzlement of county funds it was error to instruct the jury to find
defendant guilty if he loaned such funds, or used them in any way
for his private purpose, or failed to pay to his successor in office the
amount adjudged by the county to be due by him. (Page 45.)

Appeal from Arkansas Circuit Court; *Eugene Lankford,*
Judge; reversed.

### STATEMENT BY THE COURT.

The appellant was indicted by the grand jury of Arkansas
County, and was tried and convicted; the indictment (formal
parts omitted) being as follows:

"1.   The grand jury of Arkansas County, in the name and
by the authority of the State of Arkansas, accuse Joseph Ireland
of the crime of embezzlement, committed as follows, towit: The
said Joseph Ireland, in the county and State aforesaid, on the
first day of June, A. D. 1908, then and there being the duly
elected treasurer of Arkansas County, Arkansas, and having
taken the oath of office as such county treasurer as required by
law by virtue of said office aforesaid, did have in his possession
a large sum of money, towit, $149,446.49 of gold, silver and
United States currency a more particular description of said
money to the grand jury unknown and of the value of one hun-
dred forty-nine thousand four hundred forty-six and 49/100
dollars, and said money being the property of Arkansas County,
Arkansas, and while he, the said Joseph Ireland, was acting as
such treasurer aforesaid, and having in his possession such money
and public funds as aforesaid, by virtue of his said office, did
then and there with the felonious intent to cheat and defraud the
said Arkansas County, unlawfully, feloniously and fraudulently
embezzle and convert to his own use and benefit the sum of
four thousand nine hundred and forty-eight and 44/100 dollars,
against the peace and dignity of the State of Arkansas.

"2.   The grand jury aforesaid in the name and by the author-
ity aforesaid on their oaths do further present the said Joseph
Ireland aforesaid on the first day of June, 1908, being then and
there the duly elected county treasurer and having taken the
oath of office as such county treasurer as required by law, and
being then and there by virtue of his said office a receiver of

public funds and money due the said Arkansas County, and having in his possession a large sum of money, towit, the sum of one hundred forty-nine thousand and four hundred forty-six and 49/100 dollars, being the personal property of Arkansas County, Arkansas, said money consisting of gold, silver and United States currency, a more particular description to the grand jury unknown, and of the value of $149,446.49, said money then and there being public funds of the county of Arkansas, and State of Arkansas, and the said Joseph Ireland on the 18th day of July, 1908, having resigned as such county treasurer aforesaid, and his successor in office having been duly appointed and taken his oath of office as county treasurer of Arkansas County, and filed his bond as treasurer aforesaid, which said bond was approved by the county court, and the said county court having made a settlement of the account of the said Joseph Ireland, county treasurer aforesaid, and having on the 23d day of July, 1908, made an order directing him, the said Joseph Ireland, to pay to his successor in office the sum of $5,681.59, the money found due on his settlement aforesaid, he, the said Joseph Ireland, with the felonious intent to cheat and defraud the said Arkansas County, and the citizens thereof, did then and there fail and omit to pay over to his successor in office the money and funds aforesaid, but then and there feloniously and fraudulently did convert the same to his own use and benefit. The offenses numbered one and two of this indictment being the same, against the peace and dignity of the State of Arkansas."

The appellant demurred to the indictment on the following grounds:

First. It is uncertain in the offense charged.

Second. It attempts to charge two offenses.

Third. It does not state facts sufficient to constitute a public offense.

Fourth. It does not describe the property embezzled, nor identify said property, nor allege its ownership.

The demurrer was overruled, and appellant saved his exceptions.

The testimony tended to show that Joseph Ireland was first elected treasurer of Arkansas County in 1904, and after taking the office gave his predecessor a receipt for $46,941.92, and that

he filed no settlement with the county during said term of office nor at the expiration thereof. That he was re-elected and took the oath and filed his bond November 1, 1906. That the county court made a settlement of his accounts in July, 1908, and the entire record thereof was introduced and read to the jury by the clerk of the county over appellant's objections.

The first order, after specifying the amounts due the different funds and the total amount due the county, concluded: "Whereupon the court called upon the county treasurer to produce all of said funds in order that the court might make actual count of same, which the said treasurer failed and refused to do, stating that he needed time."

The record recited that certain county warrants were tendered for credit on the amount found due by him by the settlement on July 6th and credited same, leaving a balance due the county of $7,595.91. The final order of July 30th recited the presentation by J. M. Ireland of two receipts from his successor in office, E. B. Gibson, and the deduction of the amount thereof from the last balance, leaving the balance due the county at this time of $5,681.89 and concluded: "Wherefore the court finds that the said J. M. Ireland, as former treasurer, is indebted to the county in the sum of $5,681.89, and that he is short in the funds belonging to the county in the said sum of $5,681.89, he having failed and refused to produce said sum and to turn same over to his successor in office, and the new treasurer, E. B. Gibson, is hereby directed to collect said sum of $5,681.89 from the said defaulting treasurer, J. M. Ireland, and his bondsmen."

Witness then testified that E. B. Gibson took the oath as county treasurer, and read Gibson's bond as such.

C. M. Morgan, the circuit clerk, stated that no appeal was ever taken from the county court's order directing him to pay over to his successor the amount due the county.

Further evidence tended to show that he failed to pay over to his successor, E. B. Gibson, of the amount found due by the settlement, $4,423.20. That he had $2,900 on deposit to his credit in the Bank of Humphrey, which was lost by its failure; that he resigned his office and turned all his property over to his bondsmen. He carried an account as treasurer in each of the eight or nine banks of the county except one. All the revenue of the

county paid him by the collector was paid by checks on banks, and he gave his two checks of a thousand dollars each on this Bank of Humphrey, one in June, 1908, after both he and Ireland had talked with the assistant cashier and been told that the bank was in good condition—better than it had ever been.

A committee investigated his books and accounts at the instance of the county judge, and his bondsmen and its members said: "He helped as much as he could, and seemed to want to discover the truth." "We saw no evidence in his books or papers or vouchers of an attempt to conceal the true state of affairs." Only the account of one bank was investigated by the committee, the failed Bank of Humphrey, and the checks of all the others were checked over to about November 1st, when the committee ceased its investigations, not being able to determine what certain checks were for. They amounted to over six thousand dollars, and were drawn to his own order, and "we couldn't find what they were for, except he stated they were to pay court expenses. It was along in November, about the time of circuit court, and he represented it was to pay jurors and witnesses that he would go to the bank and get the money to cash their certificates," as stated by Mr. Morgan, circuit clerk and member of the committee. He said further: "I see by this report that $6,314.15 were drawn by him, it states, for his private use. They were drawn in his favor, but a number of them were for court expenses. Quite a number of the checks were drawn in favor of J. M. Ireland, and signed 'J. M. Ireland, Co. Treasurer.' We tried to trace back and find out for what purpose they were paid, but couldn't do it." C. T. Frick, cashier of the Home Bank of DeWitt, with which Ireland did most of his business as treasurer, was also on the committee, and said: "All the funds he deposited there have been fully accounted for to him or his successor. I don't know whether money was paid out on checks drawn to his individual favor or not. Sometimes he would take credit to his individual account."

J. H. Carnes, a bondsman, testified: "I had a conversation with the defendant day before yesterday in DeWitt as follows: He said: 'Hop, I expect you hold a grudge against me.' And I says: 'Well, not so much, Joe,' and he says: 'I am just as innocent about this money as you are,' and he says: 'I can put

my fingers on two men right here in DeWitt that got it, but my hands are tied.' "

W. R. Garrison testified: "Am on Ireland's bond. About a year ago, when he was drinking, the defendant said to me, 'I went into that office, not knowing the court house ring, and they were the ones that got the money.' And day before yesterday he said to me, he could lay his hands on the money, but his hands were tied. Hop Carnes was there. Defendant didn't say he knew two men who had it, he said he knew where the money went."

J. W. Ireland testified that he made no settlement of his accounts during his first term, not knowing the law and not being required by the county judge, when he went for instructions, to make a settlement. "The sums I received as treasurer were nearly all in checks on the banks in the county from Parker. I handled very little cash; there were some little fines and estray notices in cash, but very little actual money ever came to my possession. All the money, as fast as I got it, was deposited in the banks. There was but few times I had any cash in my office, and I never had over $100 there at a time. I paid out the money on the county's account by check. The bank I used most was the Home Bank of DeWitt; three-fourths of all the sums coming to my hands I deposited in that bank."

He first heard of an alleged shortage about July 1, 1908, and got the clerk to assist in going over the books, and contended there was an error somewhere. After he couldn't find it, his bondsmen selected a committee to investigate the matter, and he attended all the meetings. When the committee got down to the Bank of DeWitt, there were a great many vouchers, and the committee did not have sufficient time to go over it thoroughly and stopped. "They did not go over the accounts of the Bank of DeWitt, and that has never been done." He deposited money in the Bank of Humphrey, principally the checks on that bank given him by the collector, and after its failure took a deed from its president of his home to secure him against loss, which he turned over to his bondsmen, with all his other individual property; claimed that his commissions amounted to $5,176.08, which, with the 2 per cent. interest the banks allowed him and which he did not know it was unlawful to take, and commission from

land redemption, amounted to $6,600 or $6,700 during the time he was treasurer. Also that the $6,000 in checks drawn in his favor found by the committee included his commissions. "It also included money for court expenses. Judge Shannon would request me, whenever court would convene, to draw out the money and have it ready to pay off the petit and grand jurors, and, instead of making out a check to each one, I would go to the bank and draw money in my name, and have it ready for them as quick as they adjourned; and I did the same thing when the levying court met a time or two. Outside of my commissions, I did not draw any money from my account as treasurer for my private use."

After they claimed he was short, the sheriff was ready to make his annual settlement, and he thought the best thing he could do for the people was to resign, which he did. Concluding his testimony, he said: "I am not married. I was making $25 and $30 a month before I went into the treasurer's office; had been working for that for 16 years. Thirty dollars was as high as I ever received. My family consisted of my sister and a nephew. I had been supporting them and myself on that for several years, and had no other income. I lived economically while I was county treasurer; I didn't spend any more than what my earnings in the treasurer's office amounted to. It was paying me a good bit more than I had ever made before. I was not extravagant in my habits. I did not squander or give away the county's money. I did not convert any of it to my own use."

The court gave the following instructions for the State, and over the objections and exceptions of the appellant:

"Every officer of the State, county, city, incorporated town or township, who has taken an oath of office as required by law, employed in the collection of the public revenue, or who may have any public funds in his hands, who shall convert the same to his own use, or use it in any way for his private purpose, or shall loan or permit any other person to use or otherwise misapply any part of the money or funds so collected by him, or which may come into his possession, by virtue of his employment, and every such officer who shall fail or omit to pay the amount found due by him on settlement, shall be deemed guilty of a felony, and, on conviction thereof, shall be imprisoned in the

penitentiary not less than five, nor more than twenty-one years."
Section 1842, Kirby's Digest.

"1. If you find, from the evidence, that the defendant was
the duly qualified and acting treasurer of Arkansas County, that
is, that he was elected, filed his bond, and took the oath of office
as such treasurer, and that there came to his hands or possession
funds belonging to Arkansas County, and that there was a settle-
ment of his account as such treasurer by the county court of
said county, showing a balance due said county from him from
said fund, and that there was an order made by said court direct-
ing the defendant to pay to his successor in office the money
found due on his settlement, if any, and that the defendant re-
fused or failed or omitted to pay over to his successor in office
the sum so found due, if any, and said order was not appealed
from by the defendant, but that the defendant feloniously con-
verted the same to his own use, you will find the defendant guilty.

"3. If you find from the evidence that the defendant was
the treasurer of Arkansas County, and had taken the oath of
office, as required by law, and had in his possession funds belong-
ing to Arkansas County, and feloniously converted same to his
own use, or used it in any way for his private purpose or loaned
the same, or permitted any other person to use or otherwise mis-
apply any part of the fund which so came into his possession,
if any, you will find the defendant guilty."

The jury returned a verdict of guilty, and from the judg-
ment defendant appealed.

*John T. Castle* and *Wiley & Clayton*, for appellant.

The demurrer to the indictment should be sustained. As to
the first count, while it is now held sufficient to describe the
money generally as gold, silver and paper money (71 Ark. 415;
65 Ark. 82; 81 Ark. 25), yet in this indictment there is no de-
scription whatever, general or particular. The kind of "public
funds" converted is not named in the indictment. In order to
avoid the objection of duplicity, the indictment must be held to
charge the single offense of embezzlement. 60 Ark. 13. The
second count, therefore, must charge that or nothing, but it is
wholly insufficient to charge the offense of embezzlement. Since
the act of 1883, Kirby's Dig. § 1842, was repealed by the act of
1891, Kirby's Dig. § § 1990-1995, the indictment must be sus-

tained, if at all, under the latter act; and it has been construed to create two distinct offenses: embezzlement of public funds and wilful failure to pay over funds to the successor in office. In this second count, if embezzlement is meant to be charged, all the statements about the expiration of appellant's term of office, the appointment and qualification of his successor, the settlement of his account by the court and its direction to pay over to his successor, are mere surplusage, and the statement, "The offenses numbered one and two being the same," is but an immaterial conclusion of law. Yet this surplusage has not been treated as such by the prosecution, but the settlement was stressed throughout. The court erred in admitting in evidence the judgments of the county court stating the amount due from appellant and ordering him to pay it to his successor. 1 Greenleaf on Ev. § 537; 1 Wharton on Ev. (3 ed.) § § 776-777; Starkie, Evidence (Sharswood), (10 ed.), 331, 332; 2 Black on Judgments, § 529; 1 Freeman on Judgments, § 319a; *Id.* 159; 11 Q. B. 1028; 77 Ala. 202; 35 Vt. 457; 69 Conn. 212; 12 Minn. 293; 73 Hun 162; 22 Tex. App. 579; 38 Tex. Cr. Rep. 614; 51 *Id.* 289; 195 Pa. St. 168; 49 Conn. 228; 51 Conn. 490, 494; 5 Ham. (Ohio) 280.

*Hal L. Norwood,* Attorney General, and *William H. Rector,* Assistant, for appellee; *Joe T. Robinson,* of counsel.

1. The money was sufficiently described, and there was the proper allegation of ownership. Kirby's Dig. § 1994; *Id.* § § 2241-2243; 93 Ark. 406; *Id.* 275; 92 Ark. 413; 94 Ark. 65; 70 Ark. 472; 81 Ark. 25. The second count of the indictment is a good count for embezzlement. It either charges embezzlement or it charges nothing since it is not a good count for "wilfully failing to pay over funds to his successor in office." 80 Ark. 310. But if the second count is bad (which is not conceded) and the first good, the demurrer was properly overruled. The indictment does not charge two offenses. 60 Ark. 13.

2. If the admission of the civil judgments in evidence was erroneous, that error was cured by appellant's own testimony and his admissions.

KIRBY, J., (after stating the facts). It is contended that there was not sufficient description of the public funds alleged to have been embezzled, nor allegation of the ownership thereof.

This charge was preferred under the act of 1891, as amended in 1903 (section 1990, Kirby's Digest).

Section 1994 provides that in prosecutions under this act "it shall not be necessary for any indictment found * * * to particularly describe the kind or denomination, or date, or number of the funds, * * * but it shall be sufficient to describe them in general terms."

Section 1993 defines "public funds" as used in the act to mean: "All lawful money of the United States, and all State, county, city, town or school warrants, or bonds, or other paper having a money value, belonging to the State, or to any county, city, incorporated town or school district therein."

The first count charges that, by virtue of his office as county treasurer, he had in his possession a large sum of money, towit, $149,446.49 in gold, silver and United States currency, a more particular description to the grand jury unknown, * * * said money being the property of Arkansas County, * * * and having in his possession such money and public funds as aforesaid, * * * did * * * embezzle and convert to his own use the sum of four thousand nine hundred forty-eight and 44/100 dollars."

The second count charged him with being by virtue of his office a receiver of public funds of the county, and with having in his possession the same large sum of money, "the personal property of Arkansas County," describing it as in the first count, and designating it "public funds of the county of Arkansas," and having resigned as treasurer, and the county court having stated his account and directed him "to pay to his successor in office the sum of $5,681.59, the money found due on his settlement aforesaid, * * * feloniously and fraudulently did convert the same to his own use and benefit."

In each and both counts he is charged with having in his possession, by virtue of his office, public funds of Arkansas County, a large sum of money, gold, silver and United States currency, and the embezzling and converting to his own use, a certain sum of "dollars" in the first, and in the second $5,681.59, the money found due on his settlement aforesaid, * * * the money and funds aforesaid."

There can be no mistaking that he was charged with taking wrongfully, of the public funds in his hands belonging to Arkan-

sas County, the amounts specified, consisting of money, gold, silver and United States currency, and the funds and ownership were sufficiently described and alleged.

2. It is next contended that the indictment charges two offenses. It states that the offenses charged Nos. 1 and 2 are the same, and count No. 2 is not a charge "for wilfully failing to pay over funds to his successor in office," and the allegations relating thereto are immaterial and surplusage. *Davis* v. *State,* 80 Ark. 310.

In each count it sufficiently appears that he is charged with having public funds of the county of Arkansas in his hands as treasurer thereof, and with embezzling a certain amount of said funds, and the court committed no error in overruling the demurrer on that ground. *State* v. *Rapley,* 60 Ark. 13.

3. It is strongly urged that the court erred in permitting the judgments of the county court against the treasurer, fixing the amount due from him to the county, to be introduced in evidence. It is contended by the State that such settlement and determination of the amount due was not a judgment, and that the treasurer was present at the settlement and admitted the correctness of the amount adjudged to be due, and that such order was competent as an admission on the part of defendant.

In *Wycough* v. *State,* 50 Ark. 105, the court, in passing upon the liability of the county treasurer and sureties on his bond, said: "When the settlement is made by the principal himself, or the accounts are adjusted by the court, after notice to the principal, the adjustment, in the absence of fraud or collusion, concludes any further inquiry into the state of the officer's accounts, whether the sureties have notice or not;" citing cases. "That settlement concluded any further inquiry into the state of the officer's accounts. *Hunnicutt* v. *Kirkpatrick,* 39 Ark. 172; *Jones* v. *State,* 14 Ark. 170; *Wycough* v. *State, supra; George* v. *Elms,* 46 Ark. 260." *State* v. *Wood,* 51 Ark. 211.

Thus it appears that the settlement made by the county court, the tribunal provided by law for the settlement of the treasurer's accounts, was conclusive as against him and his sureties, and in fact and effect a judgment fixing the amount of the liability.

"A judgment in a civil case must generally be excluded from evidence in a criminal prosecution, because the parties are not

the same, and, were they the same, it would be improper to receive a judgment in a civil case as evidence of the commission of a crime of which defendant is accused, for the reason that such judgment may be founded on a mere preponderance of evidence, not sufficient to satisfy a jury beyond reasonable doubt." 1 Freeman on Judgments, § 319a; see also Greenleaf on Evidence, § 537.

In *Britton* v. *State,* 77 Ala. 202, in the prosecution of a tax collector, a judgment previously rendered against him in a civil action for the amount of the shortage was introduced in evidence, and the court said: "A judgment recovered against the defendant and his sureties in a civil suit instituted against them by county of Hale for liabilities incurred in his tax transactions was not properly admissible in evidence to establish any fact on which it was rendered. In civil cases juries are authorized to decide on the mere preponderance of the evidence when it produces satisfactory conviction. In criminal prosecutions they are not authorized to convict unless they are satisfied of the party's guilt beyond a reasonable doubt. 1 Greenleaf, Ev. (14 ed.), § 537. The judgment in the civil cause, moreover, may have been rendered on a state of facts totally irrelevant in a criminal prosecution for embezzlement—as, for example, for a liability incurred by reason of defalcation of the clerk's deputies, or even his own negligent loss of the tax money for which he would be civilly but not criminally liable. Another reason still is the want of mutuality, parties to the two proceedings being different—the judgment having been recovered in the name of the county and the prosecution being in the name of the State. It would be hard for a defendant, as observed by Mr. Starkie "that, upon a criminal charge which concerns his liberty or even his life, he should be bound by any default of his in defending his property." Starkie's Ev. (Shars.), 300-301.

In *Busby* v. *State,* 51 Tex. Crim. Rep. 311, where the fiscal agent of the Texas Penitentiary was convicted for embezzlement of State funds, and upon trial a consent judgment for the State in a civil suit recovered against him and his bondsmen for the shortage was read in evidence, the court, on a rehearing, after an analysis of the authorities, said: "In accordance with these, we are constrained to hold that the view heretofore taken was

erroneous, and that the court below should not have admitted the judgment rendered in the civil case against appellant, notwithstanding the State was a party plaintiff in the civil suit and appellant was one of the defendants; thus far there was mutuality, but not complete mutuality, as there were other defendants, and although the subject-matter of the suit was the same as we have seen, the rule of evidence was different in the two proceedings; said judgment may have been, and doubtless was, rendered upon a character of proof not permissible in this criminal prosecution. Furthermore, if we should hold that there was complete mutuality in both civil and criminal actions, it would necessarily follow, if the State had been defeated in the civil action, and the judgment rendered in favor of this appellant, same would be a complete bar to any criminal prosecution, which is not the law." See also *People* v. *Leland,* 73 Hun 162; *Riker* v. *Hooper,* 35 Vt. 457; *State* v. *Bradnack,* 69 Conn. 212; *Dunagain* v. *State,* 38 Tex. Crim. 614; *Hill* v. *State,* 22 Tex. App. 579.

It was error to permit said judgment to be read in evidence on the trial of defendant for embezzlement, and such error was decidedly prejudicial to his rights; in fact, no other testimony was introduced to show the amount due by him to the county and not accounted for, and the recital of the judgment, "Wherefore the court finds that the said J. M. Ireland, as former treasurer, is indebted to the county in the sum of $5,681.89, and that he is short in the funds belonging to the county in the said sum of $5,681.89, he having failed and refused to produce said sum and to turn same over to his successor in office, and the new treasurer, E. B. Gibson, is hereby directed to collect said sum of $5,681.89 from the said defaulting treasurer, J. M. Ireland, and his bondsmen," and the circuit clerk's testimony that no appeal was ever taken from the county court's order directing him to pay over to his successor the amount due the county, was well nigh conclusive against him; and especially is this true when the unnecessary allegations in the second count of the indictment relating to said settlement and order of the county court directing him to pay over to his successor in office said sum of money, and his failure and omission to do so, held by us to be surplusage, were before the jury, with section 1842, Kirby's Digest, erroneously given in charge to them by the court. Said section has

been repealed, and is not the law, and could have had no other than a highly injurious and prejudicial effect against the defendant under the circumstances of the trial.

Instruction No. 3 given for the State, telling the jury that if the defendant was treasurer of the county and had in his possession funds belonging thereto, and feloniously converted same to his own use, or used it in any way for his private purpose, "or loaned the same or permitted any other person to use or otherwise misapply any part of the fund which so came into his possession, if any, you will find the defendant guilty," was erroneous and misleading, since from said surplusage in the indictment with the testimony that the funds had been loaned to the banks, or that the banks in which they were deposited had paid the treasurer interest hereon, the jury may have concluded that they were authorized to convict him for loaning such funds.

Instruction No. 1 was objectionable also in that the jury might have understood from it that they were authorized to find defendant guilty if he failed or omitted to pay to his successor in office the amount found and adjudged to be due by the county court in its settlement with him.

For the errors indicated, the judgment is reversed, and the cause remanded for a new trial.