## HODGES v. STATE.

No. A-11180.   Sept. 6, 1950.

(222 P. 2d 386.)

L. B. Clay and Percy Hughes, Hobart, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, J.   The plaintiff in error O. W. Hodges, defendant below, was charged by information in the county court of Kiowa county, Oklahoma, tried by a jury, and found guilty of the crime of driving a motor vehicle on November 9, 1948, while under the influence of intoxicating liquor.   The jury fixed his punishment at a fine of $225 and imprisonment in the county jail for 90 days, and judgment and sentence was entered accordingly; from

which judgment and sentence this appeal has been perfected.

This case was tried on September 20, 1948, and the appeal lodged herein on December 13, 1948. No briefs were filed in this case until March 22, 1950. The defendant filed his brief on said last date and the case was submitted on the record and on the defendant's brief, at which time the state was given 20 days thereafter to file an answer brief, but to this time the state has not elected so to do. In Phillips v. State, 85 Okla. Cr. 81, 185 P. 2d 239, 240, it was said:

"Where the brief of the defendant presents assignments of error supported by ample legal authority and no answer brief contesting the contentions of defendant is filed on behalf of the state, this court indulges the presumption that the state is unable to find authorities to dispute the proposition of law presented on behalf of the accused."

Herein we can only indulge a like presumption.

The basis of the appeal lodged herein is twofold. First, the defendant contends the verdict of the jury is not sustained by sufficient evidence and is contrary to law. Second, the defendant contends that the trial court erred in admitting incompetent, irrelevant and immaterial evidence; and in decisions on questions of law over the objection and exception of the defendant.

In considering these two propositions it will not be necessary for a determination of these issues to make a detailed review of the evidence. It is sufficient to say that the defendant, Hodges, on November 9, 1948, at about 8 p. m., one mile west of Hobart, was driving his panel truck, the sides and back of which were labeled "O. W. Hodges Termite Service". The record discloses that the defendant's truck was weaving from one side of the road

to the other side, headed in an easterly direction and followed by two other automobiles. Frank Dusek was going west. Hodges' truck left his side of the road and sideswiped the side of Dusek's car throwing Dusek's car back across the road in such manner that it collided with Herman Moore's car which was the second car going east behind Hodges' car. Hodges did not stop until some distance away, then got out and looked and found his left fender and wheel torn away. He testified he believed it was the result of a hit and run driver and he thereafter proceeded on three wheels and the brake drum of his left front wheel into Hobart to his home. The evidence in chief of his drunkenness at the time is purely circumstantial. Nobody saw him at the scene of the accident. The witnesses of the state based their claim to intoxication upon the manner in which the defendant was driving. They said they could tell by the way he was weaving that he was drunk. The defendant testified that he was blinded by the lights of the automobile immediately behind him. The record discloses that the David Perry car following immediately behind the defendant was equipped with two large spotlights, and two fog lights, in addition to the usual headlights. The defendant denied being drunk but on cross-examination admitted having drunk two bottles of beer about 5 p. m., after which he said he stayed in the truck and smoked for an hour before returning home. He said he had the flu and when he got home he did take a drink of whisky. The direct evidence of intoxication at the time of the collision as hereinbefore stated is based entirely upon the manner in which the defendant drove. Though some of the parties to the collision trailed the defendant into Hobart none of them attempted to ascertain his condition at that time. They did not even know he was driving until the next day, when he admitted to them that

he was the driver of the car. The record shows the constable who made the arrest of the defendant 30 minutes after the collision testified at the hearing on the defendant's motion to suppress the evidence heard on August 31, 1948. Therein he testified the defendant was drunk when he was arrested. This evidence offered on the motion to suppress, of course, could not be considered in the trial of the issues in chief except by stipulation or by repetition thereof on the trial in chief. There was no such stipulation, and the constable was not recalled to testify in the trial on the merits. Why, we are at a loss to understand; certainly, his evidence on the issue of defendant's drunkenness was most pertinent. If his evidence was not used by the state in chief, certainly when the defendant denied his drunken condition the constable's evidence in relation to his condition at the time of the arrest, not being too remote from the time of the collision, should have been used in rebuttal. But the record discloses no further use was made of the constable's knowledge in this regard. Neither was the jailer used in chief or rebuttal as to the defendant's condition, nor any of a number of people who saw him shortly after the collision. It appears to us that the case could have been materially strengthened by the evidence of the constable and the jailer. We can but conclude that this case was poorly tried. While the evidence tends to show the defendant was driving while drunk, he should not be convicted of drunken driving solely because of the way he drove, when driving in the nighttime and being followed by an automobile the lights from which may have blinded him, particularly if the blinding light was from two large spotlights and two fog lights as they may have been in this instance. The question of drunkenness is a condition, to be established by evidence, and not a matter to be presumed. There is a strong presump-

tion of drunkenness in this case, but under the record the evidence thereof to say the least is weak. We are convinced the defendant's drunkenness could have been conclusively established.

As to the defendant's second proposition, from the inception of the trial to the conclusion thereof, the state in impaneling the jury and examining the parties to the collision repeatedly made reference to a judgment for damages which had been rendered in a civil action in favor of the parties injured in the collision and against the defendant. When this matter was first injected by the state prosecutor in impaneling the jury, the trial court at that time instructed the jury that they could consider such matter only in mitigation of the punishment. The trial court did not stop there, however. He devoted instructions 14, 15 and 16 to the fact that evidence of these judgments was admissible in mitigation of the defendant's punishment and that personal injury and property damages incident to the collision might be considered in "aggravation of and in determining, fixing, declaring and assessing his punishment". Both the evidence as to the judgment for personal injury and property damages incident to the collision and the court's instruction in relation thereto were highly prejudicial to the rights of the defendant. The only issue herein involved was drunken driving. The question of personal injuries and property damages and judgments had no place in the trial whatsoever for any purpose. In 34 C.J. 970, § 1389, it is said:

"A judgment in a civil action is not ordinarily admissible as evidence in a subsequent criminal prosecution."

The reason for the rule is apparent. It would not be just to permit the conviction of a defendant on the

basis of evidence of judgments obtained against the defendant in civil actions for personal injury and property damage, where the quantum of evidence for a verdict awarding such judgments is arrived at by a preponderance of the evidence, while in a criminal action the quantum of evidence necessary for a verdict of guilty is such as to convince the jury of guilt beyond a reasonable doubt. State v. Dula, 204 N. C. 535, 168 S.E. 836; Wilcox v. State, 8 Ga. App. 536, 69 S.E. 1086; State v. Weil, 83 S.C. 478, 65 S.E. 634, 26 L.R.A., N.S., 461; Green v. State, 204 Ind. 349, 184 N.E. 183, 87 A.L.R. 1251; Wingrove et al. v. Central Pennsylvania Traction Co., 237 Pa. 549, 85 A. 850, wherein the Pennsylvania court said:

"Judgments in criminal cases are generally inadmissible to establish the facts of a civil case, and vice versa." Jay v. State, 15 Ala. App. 255, 73 So. 137; Ireland v. State, 99 Ark. 32, 136 S.W. 947; Busby v. State, 51 Tex. Cr. R. 289, 103 S.W. 638; Dunagain v. State, 38 Tex. Cr. R. 614, 44 S.W. 148; and State v. Bradneck, 69 Conn. 212, 37 A. 492, 43 L.R.A. 620.

The object in the introduction of evidence of the civil judgments in this case was for no other purpose than that of leading the jury to believe, in the trial of this criminal case, that the same issues had already been determined by another jury in the civil actions. Nothing could be more prejudicial to a defendant in a criminal case. The trial court erred therefore both in admitting evidence of the judgments for personal injuries as well as the judgments for property damages against the defendant and instructing the jury they might consider them in mitigation or in aggravation of the punishment of the defendant. For the foregoing reasons the case is reversed and remanded, with directions for a new trial not inconsistent with the views herein expressed.

JONES, P. J., and POWELL, J., concur.