COMMONWEALTH *vs.* PETER TRUE.

Norfolk. June 16, 1983. — October 14, 1983.

Present: DREBEN, KAPLAN, & WARNER, JJ.

*Larceny. False Pretenses.*

A finding that the defendant in a criminal case, a building contractor, was guilty of obtaining by false pretenses the property of a prospective buyer of a house which the defendant had under construction was not warranted by evidence merely that the defendant had accepted a $3,000 deposit from the buyer; that, prior to the defendant's acceptance of the deposit, a creditor of the defendant, who had performed plumbing work for him, had obtained an execution for the amount of $6,959; that this creditor subsequently acquired the house at a sheriff's sale; and that the buyer never recovered his deposit. [711-713]

COMPLAINT received and sworn to in the Northern Norfolk Division of the District Court Department on April 23, 1981.

On appeal to the jury session of that court, the case was heard by *Clancy, J.*

*Joseph F. Killion* for the defendant.

*Peter M. McElroy,* Assistant District Attorney, for the Commonwealth.

DREBEN, J. After a real estate transaction fell apart, the would-be purchaser, who was out of pocket $6,000, twice complained against the defendant builder for the offense of larceny. Two separate trials ensued.[1] Although acquitted of the charge of larceny occurring on September 30, 1980,

---

[1] One complaint issued on February 25, 1981, in the District Court of Eastern Norfolk on account of a check delivered by the complainant to the defendant on September 30, 1980; the other issued in the District Court of Northern Norfolk on April 23, 1981, on account of an earlier check delivered by the complainant to the defendant on August 20, 1980. See Mass.R.Crim.P. 9(a)(3) & 37(b)(2), 378 Mass. 859, 915 (1979).

the defendant was found guilty in a jury-waived trial on a charge of larceny occurring on August 20, 1980. We agree with his claim on appeal that his motion for a required finding of not guilty made at the close of the Commonwealth's case and renewed at the close of all the evidence should have been allowed on the August 20, 1980, charge.

The buyer signed a purchase and sale agreement on August 20, 1980, for the purchase of a house under construction on a lot on Christina Drive in Braintree. The purchase price was $86,500, and the buyer gave the builder[2] a check for $3,000 as a deposit. There was no requirement that the check be held in escrow. The agreement provided that the builder would complete all the work listed on a page designated as Exhibit A "prior to the time of the delivery of the deed or occupancy." That date, September 20, 1980, came and passed,[3] yet the house was not finished and remained unfinished on September 26 and 27, the agreed upon extended dates of performance. On September 30, the buyer paid an additional deposit of $3,000[4] and moved into the premises upon also paying "an adjustment for occupancy," as provided in the agreement, of $650 per month. The closing never took place, and on October 14, 1980, a plumbing contractor, who was a creditor of the defendant, bought the property at a sheriff's sale. The buyer did not recoup his deposits.

---

[2] The seller named in the purchase and sale agreement was Richard True, trustee of 962 Midvale Street Trust. Although the defendant argues that he is insulated from the transaction because of the trust, we do not consider that question or relate the facts relevant thereto. For the purpose of this opinion, we treat the defendant as the seller.

[3] Although paragraph 8 of the agreement (entitled "Time for Performance: Delivery of Deed") set September 20, 1980, as the date for delivery of the deed, paragraph 9 ("Possession . . . of Premises") referred to paragraph 29, which provided that the premises "shall be completed . . . and ready for occupancy on or before September 20, 1980. . . . The closing shall take place on or before November 20, 1980."

[4] This check was the subject of the trial in the District Court of Eastern Norfolk where the defendant was acquitted.

The Commonwealth claims that it introduced sufficient evidence to show that at the time the defendant took the August 20, 1980, check he intended to defraud the buyer, because he knew he would not or could not comply with the purchase and sale agreement.

Before looking more carefully at the evidence introduced by the Commonwealth, we shall examine the evidentiary requirements for finding an intent to defraud. While deception as to a person's present intention to perform a promise may be the basis of a conviction of larceny by false pretenses, *Commonwealth* v. *Green,* 326 Mass. 344, 348 (1950); *Commonwealth* v. *Wright,* 5 Mass. App. Ct. 860 (1977), such deception cannot be inferred from the mere nonperformance of the promise. *People* v. *Ashley,* 42 Cal.2d 246, 263 (1954). This is the established rule in Massachusetts for civil actions for deceit. *Galotti* v. *United States Trust Co.,* 335 Mass. 496, 501 (1957). *Botti* v. *Iovino,* 337 Mass. 775 (1958). See also Prosser, Torts § 109, at 730-731 (4th ed. 1971). In addition, other authority indicates that in civil actions the promisor's failure to perform the agreement does not "throw upon him the burden of showing that his nonperformance was due to reasons which operated after the agreement was entered into. The intention may be shown by any other evidence that sufficiently indicates its existence, as, for example, the certainty that he would not be in funds to carry out his promise." Restatement (Second) of Torts § 530 comment d (1977). No less can be required in a criminal prosecution. See *Commonwealth* v. *Louis Constr. Co.,* 343 Mass. 600, 604 (1962). The authorities elsewhere are in accord.[5] *People* v. *Ashley,* 42 Cal.2d at 263. See Model Penal Code § 223.3(1), and comment 3(b), at 187-190 (1980) ("Almost every recent code and proposal that punishes theft by false promise also

---

[5] Most are based on statutes which abrogate the rule that a false promise cannot be the basis of larceny by false pretenses. E.g., *Commonwealth* v. *Layaou,* 266 Pa. Super. 411, 413-414 (1979); *Phillips* v. *State,* 640 S.W.2d 293, 294 (Tex. Crim. App. 1982). See 3 Torcia, Wharton's Criminal Law § 432, at 477-488 (14th ed. 1980).

includes a clause providing that more than mere failure to perform a promise is required to support an inference of deceptive intent." *Id.* at 189). See also Pearce, Theft by False Promises, 101 U. Pa. L. Rev. 967, 1007 (1953). Cf. *State* v. *Basham*, 571 S.W.2d 130, 132-134 (Mo. App. 1978).

In light of this requirement, we must look to see what evidence, other than the defendant's failure to perform, was elicited to show that he anticipated that he would not perform his promise. Had the Commonwealth shown the defendant's insolvency, such evidence would have "a direct tendency to show the intent with which the false pretense was used." *Commonwealth* v. *Jeffries*, 7 Allen 548, 568 (1863). There was, however, no showing of the defendant's insolvency. Nor was there even proof that the total amount of encumbrances on the property at the time the agreement was signed exceeded the purchase price.

The Commonwealth points to evidence indicating that a creditor who had performed plumbing services obtained a writ of execution for $6,959 on June 4, 1980, a date prior to August 20, 1980. It cannot, however, be reasonably inferred from that writ that the creditor would not wait until the date for closing on an $86,500 transaction to obtain his $6,959.[6] Cf. *Pybus* v. *Grasso*, 317 Mass. 716, 720 (1945). We note that the purchase and sale agreement specifically authorized the seller to use the purchase money to clear title.

Moreover, while the complainant testified that a number of the items listed on Exhibit A had not been completed, it was evident from the items not mentioned by him that some work had been done on the premises. In fact, the complainant testified that at the time he moved in, the defendant brought the kitchen stove and called the electrician.

---

[6] The defendant, in fact, introduced an agreement with the creditor whereby the latter agreed to postpone the sheriff's sale to enable the defendant to complete the sale to the complainant.

While it is true that the complainant was ill-used,[7] and that the defendant failed to comply with many of his obligations prior to the falling through of the transaction, we conclude there was insufficient evidence to show that on August 20 the defendant anticipated he would not perform. As previously indicated, there was no showing of insolvency, or encumbrances exceeding the purchase price, or a failure by the builder to attempt to do any work on the house.[8]

We think this case, like *Commonwealth* v. *Louis Constr. Co.*, 343 Mass. at 606, is one where the buyer's remedy is civil not criminal. "It is not the policy of the law to punish criminally mere private wrongs." *Id.* at 605, quoting from *Commonwealth* v. *Drew*, 19 Pick. 179, 185 (1837).

As we conclude that the defendant was entitled to a required finding of not guilty, we do not reach the other issues raised in his appeal.

*Judgment reversed.*
*Judgment for the defendant.*

---

[7] The buyer moved from his Franklin home and went to the premises with his possessions in a moving van on September 26, but could not move in. The same thing happened on September 27, and after the buyer finally moved in on September 30, 1980, the building inspector refused to give an occupancy permit.

[8] The Commonwealth also relies on the provision in the purchase and sale agreement requiring the defendant to refund all payments if a clear title could not be given at the time of passing. The mere failure to perform this promise is also insufficient to show fraud, if there was no evidence to show that the defendant anticipated he would not deliver the property as promised.