COMMONWEALTH *vs.* JOHN M. ARONSON.

Middlesex.   December 3, 1924. — January 9, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Perjury.   Practice, Criminal,* Variance.   *Evidence,* Competency.

An indictment charged the defendant with perjury at the trial of an action at law where he was defendant and where the question, whether the plaintiff in that action signed five contracts in the sight and presence of the defendant, became and was material to an issue on trial, as to which issue the indictment charged that the defendant "did willfully and corruptly testify and say in substance and effect that" the plaintiff therein "signed five contracts in the said presence of" the defendant, "his said testimony as above set forth being false as he well knew." Evidence was admitted at the trial tending to show that the testimony alleged to be false was as to "a memorandum of an agreement," which was in substance as follows: "I . . . [naming the plaintiff] have this day agreed to purchase of . . . [the defendant] and the said . . . [the defendant] has agreed to sell to the said . . . [the plaintiff] a lot of . . . or carloads of oil barrels at the price. . . . [The plaintiff] . . . is to remove these mentioned barrels within . . . days . . . from this date from . . . [the defendant's] yard . . . and . . . [the plaintiff] is to inspect these barrels at the time of loading. . . . [The defendant] hereby acknowledges receipt of check for . . . dollars." *Held,* that

(1) The "memorandum of an agreement" contained every element of an express formal contract;

(2) There was not a fatal variance between the indictment charging perjury as to the contracts and the evidence to which the false testimony related;

(3) There being evidence introduced by the plaintiff at the trial of the action at law above described tending to show an express and an

implied warranty by the defendant as to the barrels being sold to the plaintiff, which the testimony of the defendant as to the "contracts" tended to contradict, the testimony alleged to have been false was material at that trial.

At the trial of the indictment above described, the plaintiff in the action at law testified at length, and without objection by the defendant, as to his testimony at the trial of that action, the pleadings therein were admitted, a transcription of the testimony of the defendant was admitted without objection, and, subject to exception by the defendant, a transcription of the testimony of the plaintiff was admitted. *Held,* that

(1) The transcription of the plaintiff's testimony was admissible to show the issue or issues raised by the pleadings in the action at law, as well as to show what issues were in fact submitted to the jury under the instructions of the judge;

(2) Such evidence was not inadmissible because in substance it corroborated the oral testimony of the plaintiff in the action at law, which already had been admitted without objection in the criminal case.

INDICTMENT, found and returned on March 12, 1923, charging perjury.

In the Superior Court, the indictment was tried before *Qua,* J. Material evidence is described in the opinion. In admitting the testimony given by Tellier at the trial of the action at law described in the opinion, the judge instructed the jury "that the object of putting in all this evidence, some of it at least, which is going to be read to you, is this: that in order to convict a man of the crime of perjury it must be shown that he testified falsely in court at a trial about an issue which was material to that trial, to the determination of that case. If he testified falsely about some immaterial or trivial thing he would not be guilty of this offense under the law. So this evidence is put in to indicate what the material issues in controversy were in order that it may be determined whether, if this man did testify falsely, it was about a material issue. Now, the only charge against him, as you already know, as to his having testified falsely is that he falsely said that these five documents or contracts, as they have been called, were signed by Mr. Tillier when the Commonwealth says that that was not true, that no such papers had ever been signed or executed by Mr. Tillier. Now, as this evidence is read as to testimony that went in at the other trial, you should bear in mind that the only testimony which

it is claimed was false or which he is charged with having testified to falsely is that one thing, as to the execution and signature of those documents. The rest of this testimony is now read solely for the purpose and is to be considered solely as bearing upon what the issues were and whether they were material with reference to which the alleged false testimony about the documents was given. I think that will limit the scope of this evidence to a proper place."

At the close of the evidence, the defendant asked for the following rulings:

"3. If no circumstances are proved which corroborate the complaining witness, the defendant is entitled to be acquitted."

"5. The evidence of the government tending to show that defendant testified at the other trial that he signed a paper and gave it to Tillier and that Tillier signed a paper and gave it to the defendant, does not as matter of law support the allegation in the indictment 'that said Fred Tillier signed five contracts.'"

"8. Under the pleadings in Tillier *v.* Aronson, and on the material evidence introduced in that case, there was no implied warranty as to quality or fitness for any particular purpose other than the expressed purpose that the barrels were to be used as oil barrels.

"9. That the real issue in Tillier *v.* Aronson was whether a certain number of second hand oil barrels was lawfully rejected by the plaintiff in that action because they were not refined or No. 1 barrels, and, if lawfully rejected, the amount of damages the plaintiff was entitled to recover.

"10. That the five alleged contracts were not material on the issue whether the plaintiff in Tillier *v.* Aronson lawfully rejected a certain number of barrels.

"11. That there is a fatal variance between the allegation in the indictment that the defendant falsely testified that said Fred Tillier signed five contracts and the proof that the defendant testified that the said Fred Tillier signed only a memorandum of an alleged oral agreement.

"12. That a written memorandum of an oral agreement is a different thing from a written contract.

"13. That where an instrument is described according to its legal effect the description must be proved.

"14. That the evidence of the Commonwealth has failed to establish the materiality of the alleged false testimony."

The above rulings were refused. The defendant was found guilty and alleged exceptions.

*J. J. Higgins*, for the defendant.

*A. K. Reading*, District Attorney, & *W. L. Bishop*, Assistant District Attorney, for the Commonwealth, submitted a brief.

PIERCE, J. The defendant was indicted for the crime of perjury. The indictment set forth " That in a proceeding in the course of justice before a Justice of the Superior Court on the twenty-ninth day of January in the year of our Lord one thousand nine hundred and twenty-three, at Cambridge, in the County of Middlesex aforesaid, on an issue within the jurisdiction of said Court duly joined and tried before a jury of the said County between Fred Tillier, as plaintiff, and John M. Aronson, as defendant, said John M. Aronson was lawfully sworn as a witness. Whereupon it became and was material to said issue as to whether said Fred Tillier signed five contracts in the sight and presence of said John M. Aronson and to this the said John M. Aronson did willfully and corruptly testify and say in substance and effect that said Fred Tillier signed five contracts in the sight and presence of said John M. Aronson; his said testimony as above set forth being false as he well knew."

At the trial, the writ, declaration and answer in the civil case of Tillier *v.* Aronson were admitted in evidence. The declaration was in three counts, and the plaintiff upon one or other of these counts sought to recover of the defendant damages for failure of the defendant to deliver to the plaintiff barrels such as the plaintiff had ordered, and paid for in advance.

Without objection, the testimony of Aronson taken stenographically at the civil trial was read to the jury. In substance this testimony was that Aronson had not known Tillier before March 15, 1918, when Tillier asked if he would sell him barrels in carload lots; that Aronson replied he would

sell whatever he had in his yard; that Tillier went down to the yard and looked over the barrels; that he came to a pile of barrels and asked the price of these barrels; that Tillier said he would give Aronson $2.25 per barrel if he would put them on the cars and ship them to New Jersey; that Aronson said he would not be willing to do that, but Tillier could buy them f. o. b. cars Cambridge; that Tillier said he would do this provided he was allowed to inspect the barrels at the cars in Cambridge, and Aronson agreed to this; that they went upstairs and Tillier gave Aronson a check for the barrels, Aronson saying that he would start shipments as soon as the check came through; that thereupon Aronson directed his bookkeeper to make out "a memorandum of an agreement," which was made in duplicate. Aronson testified: " I signed the original and Mr. Tillier signed the duplicate. I saw Mr. Tillier sign it myself. He signed it in my office in the presence of my bookkeeper." He further testified that on each of the five occasions on which Tillier came to purchase barrels a memorandum of the agreement entered into was made out in duplicate; that he saw Tillier sign one copy and he signed the other. In the civil case these documents were introduced in evidence, and when the case was finished were handed to the defendant by his counsel in that case; the defendant was then told that the papers were of no further use and he put them in the waste basket.

These papers were alike in form, were filled in according to each order, and read as follows: "I, F. Tillier, of Brooklyn, New York, have this day agreed to purchase of J. N. Aronson of East Cambridge, Mass.; and the said J. N. Aronson has agreed to sell to the said F. Tillier a lot of . . . or carloads of oil barrels at the price. . . . Mr. Tillier is to remove these mentioned barrels within . . . days . . . from this date from J. N. Aronson's yard, Cambridge, and Mr. Tillier is to inspect these barrels at the time of loading. J. N. Aronson hereby acknowledges receipt of check for . . . dollars." At the trial in the civil case Tillier denied that he had signed the documents; and an expert, to whom the documents were referred, testified that in his opinion the signatures on them were not in Tillier's handwriting. In the

case at bar a handwriting expert testified that he had examined the five contracts and an admittedly genuine copy of Tillier's handwriting; "that the signatures were too similar to have been written on different dates"; and "that in his opinion the signatures on the five documents were not those of Mr. Tillier."

At the civil trial Aronson further testified: " During the talk with Mr. Tillier before papers were passed there was no talk about the particular kind of barrels to be furnished. I shipped him no barrels which he did not pick out in the yard or inspect at the cars except one carload which was shipped from Maine. It was my general custom to have the buyer pick out the barrels from the pile. A man who wants to buy barrels from me has to look around until he finds what he wants. It was my usual custom to have a written agreement similar to the agreement with Mr. Tillier, even if the barrels were paid for in advance." In passing it must be noted that the alleged signed " memorandum of an agreement " in an important particular differs from the unformulated oral agreement, in that Tillier does not agree in the " signed agreement " to " buy them [the barrels] f. o. b. cars Cambridge "; and in that the " signed agreement " provides for the purchase and sale of " oil barrels," as distinguished from barrels which may or may not be fit for or adaptable to any particular use.

It was the contention of the plaintiff that he purchased five cars of second-hand oil barrels, which were to be paid for in advance and were to be shipped to Bayonne, New Jersey. The second count of the declaration in the civil action alleged an express warranty that the barrels purchased were " refined No. 1 barrels." The third count in the said declaration alleged " that the barrels were not merchantable as oil barrels and not fit and suitable for the purposes of the plaintiff." On these allegations of the declaration there were to be tried the issue of an express warranty and the issue of an implied warranty.

The " memorandum of an agreement " contains every element of an express formal contract, and if executed by

the parties was a complete answer and defence to the allegation of an express warranty, set out in count 2 of the declaration. The alleged memorandum if executed was also a defence to the contention of the plaintiff that he had the right of inspection in New Jersey, as a condition subsequent to the passing of title in Cambridge; and established the contention of the defendant that the right of inspection and the right of rejection were, by the terms of. the written agreement, to be exercised, if at all, in Cambridge; and that the failure to inspect in Cambridge within the terms permitted by the written contract deprived the plaintiff of the right to return the goods and receive the money paid, as also of the right to retain the barrels and recover damages of the defendant because of any breach of an implied warranty of fitness, which an inspection at the time and place named in the alleged contract would have disclosed. *Bradt* v. *Hollaway,* 242 Mass. 446. *Rosenbush* v. *Learned,* 242 Mass. 297. Williston, Sales, § 234, n. 34, 35, 39, 40. G. L. c. 106, § 15, cl. 3.

What has been said disposes of the contention of the defendant that there was a fatal variance between the allegation in the indictment, " and that the defendant falsely testified that said Fred Tillier signed five contracts," and the proof; as it does of the contention " that the five alleged ' contracts ' were not material on the issue whether the plaintiff in Tillier *v.* Aronson lawfully rejected a certain number of barrels." The reading of Tillier's testimony in the civil trial, taken stenographically, was admissible to show the issue or issues raised by the pleadings in that action. It was also admissible to show what issues were in.fact submitted to the jury under the instructions of the judge; and such record of the testimony was not inadmissible because in substance it corroborated the oral testimony of Tillier given in the criminal case without objection. *Foye* v. *Patch,* 132 Mass. 105. *Butchers' Slaughtering & Melting Association* v. *Boston,* 137 Mass. 186. *Coyle* v. *Taunton Safe Deposit & Trust Co.* 216 Mass. 156. An examination of the charge does not disclose, as the defendant contends, that the judge left to the jury to

decide " whether the evidence of the false testimony by the defendant was material to any issue," but shows that he did not leave such issue to them.

We have examined all the contentions of the defendant and find no error in the action of the court concerning them.

*Exceptions overruled.*