COMMONWEALTH  *vs.*  IRVING A. GREEN
(and a companion case against the same defendant).

Worcester.   May 1, 1950. — September 15, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Larceny. False Pretences. Evidence,* Competency, Relevancy and ma-
teriality, Admissions and confessions. *Practice, Criminal,* Exceptions:
whether error harmful. *Error,* Whether error harmful.

A verdict of guilty of larceny by false pretences was warranted by evi-
dence that the defendant knowingly made false statements of fact
concerning a supposed large investment trust which in fact was non-
existent, that such statements were made with intent that the persons
to whom they were made should rely on their truth, and that such
persons in reliance on their truth paid money to the defendant for
investment in such trust.

The admission of certain evidence over the objection of the defendant
at the trial of an indictment was not erroneous merely on the ground
that such evidence concerned matters which were not specifically set
forth in particulars furnished by the Commonwealth.

At the trial of an indictment for larceny from various persons through
obtaining money by false pretences for a purported investment, a
certain paper relating to the disposition of "the funds placed with you
[the defendant]" was material and admissible in the circumstances
as an admission by the defendant that funds of an investor had been
placed with him; certain cross-examination of the defendant was
proper to show a disposition by him of some of the investors' money
different from a disposition which he had previously testified he had
made of it; and evidence of certain matters between the defendant and
investors previous to the dealings specified in the indictment was
admissible as showing preliminaries to such later dealings.

Any error in an exclusion of certain evidence offered by the defendant
at the trial of an indictment was cured by his being allowed later to
testify fully as to the subject matter of the excluded evidence.

Two INDICTMENTS, found and returned on October 20,
1948, and January 20, 1949, respectively.

The indictments were tried in the Superior Court before
*Collins,* J.

*S. G. Walker, Nicholas Fusaro, & Nunziato Fusaro,* for the
defendant, submitted a brief.

*J. F. Baxter*, Assistant District Attorney, for the Commonwealth.

WILLIAMS, J.   These are two indictments in which it is charged in separate counts that the defendant did steal from four named persons, Leland, Hendrickson, DaCosta, and Bennett, various sums of money.   The defendant was found guilty by a jury on counts 1, 2, 3, 4, 6, 7, and 8 of indictment numbered 1402 and count 1 of indictment numbered 1587.   In indictment numbered 1402 counts 1, 2, and 3 alleged the larceny from Leland of $100 on March 9, 1943, of $100 on January 15, 1944, and of $3,000 on January 15, 1944.   Count 4 alleged the larceny from DaCosta of $1,400 on January 1, 1943, and counts 6, 7, and 8 the larceny from Hendrickson of $1,500 on January 15, 1943, of $200 on July 16, 1943, and of $300 on December 3, 1944. Count 1 of indictment numbered 1587 alleged the larceny of $1,000 from Bennett on July 17, 1945.   We have before us in a consolidated bill the defendant's exceptions to denials of motions for directed verdicts of not guilty on the above counts, to denials of motions to strike out certain evidence, and to rulings on matters of evidence.

There was evidence substantially as follows.   Between January, 1943, and July, 1945, the defendant solicited and obtained from the four persons above named the sums of money as stated in the various counts except that the amount of money obtained from Leland as alleged in count 3 of indictment numbered 1402 was $300 instead of $3,000. Statements were made by the defendant to these four persons by reason of which they were induced to part with their money and, although differing somewhat in phraseology, in general were to the effect that a large fund was being accumulated in Boston and in England to be used in the formation of an investment trust, the certificates of beneficial interest in which were later to be issued.

The talks with Leland in reference to the proposed trust began in 1939.   In 1941 the defendant said that it was a secret organization; that it was a group of wealthy men in Boston who were going to take in a few individuals who

wanted to get a good return for their investment; that it was considered a wealthy trust consisting of wealthy men in Boston; that it was an English group of men and an English trust; and that it was strictly confidential, no one being supposed to know who the men were. At one time Leland was shown a book containing figures of the large sums of money already earned from the accumulated fund of the trust. He was also told that after the trust was formed it was thought that those who were in it were going to be taken to England with all expenses paid.

In January of 1943 the defendant told Hendrickson that if he invested in the trust fund he would receive very large returns; that his money was just as safe there as in any bank in the United States; that "they were going to have branch offices in different places throughout the country, and in the European countries"; that the money would not earn less than fifteen per cent and might earn up to fifty per cent; and that the lowest that the trust had ever earned was thirty-three per cent. Hendrickson was also shown the book containing figures amounting to millions which the trust was already earning. The defendant told Hendrickson that nobody but the ones who belonged to the same fraternal organization would be allowed to invest any money in the trust fund. At one time the defendant, speaking of the millions the trust had, said that it had more money to do business with than the New York Stock Exchange. He further said that "there were twelve beds in Massachusetts General Hospital paid by the group for the interest of the investors and their families."

Having met Miss DaCosta through Hendrickson and she apparently having learned through Hendrickson of the proposed trust, the defendant told her that any money she might invest was as safe as in any bank; that she would get fifteen per cent on any money she might put in and possibly more; and that it was a trust fund and she was not to talk about it to anyone, it was a secret.

In 1945 the defendant told Bennett, who had had previous dealings with the defendant, that one of the investors

in the investment company had withdrawn, and that if he, Bennett, would take over part of this man's equity he would get a bonus. The defendant said that the company was investing its money in the stock market; and that "they were taking advantage of the slight rises and declines of the various stocks and because of their vast holdings, they were able to do that at a profit."

Whenever the defendant received a payment from a contributor he gave that person a promissory note for the amount advanced payable without interest at the end of twelve months. These notes were signed by the defendant. He told Leland at the time he gave Leland the first note that this "receipt was to be substituted by a certificate when the trust was formed." On maturity, notes were replaced by renewal notes and many, if not all, of these notes were signed not only by the defendant but also by one Edwin C. Hunt.

The defendant testified "that he never saw any printed letterheads, certificates, or any printed circulars or prospectus or anything of that sort printed with the name of the investment trust on it" in the years from 1938 to 1946 when he was soliciting subscriptions for the trust. He testified that there was no investment trust. It was the contention of the defendant that he was acting as agent on commission for Edwin C. Hunt and that what he told the various persons from whom he obtained money was based on information which he had received from Hunt; that what he told the contributors was nothing within his personal knowledge; and that he honestly believed in the truth of the statements made. There was no evidence that any trust was ever formed or that the formation of any trust was ever contemplated. Edwin C. Hunt apparently was an existing person living in Boston. Leland and Hendrickson testified that at one time they met him. It appeared at the trial that Hunt was not in good health and he was not called as a witness.

The larcenies alleged to have been committed were obtaining money by false pretences. See G. L. (Ter. Ed.)

c. 266, § 30, as amended. To constitute this offence, it must appear that there was a false statement of fact known or believed by the defendant to be false made with the intent that the person to whom it was made should rely upon its truth, and that such person did rely upon it as true and parted with personal property as a result of such reliance. *Commonwealth* v. *Drew,* 19 Pick. 179, 182–184. *Commonwealth* v. *Stevenson,* 127 Mass. 446, 448. *Commonwealth* v. *Howe,* 132 Mass. 250, 258. *Commonwealth* v. *Devlin,* 141 Mass. 423. *Commonwealth* v. *Dunleay,* 153 Mass. 330. *Commonwealth* v. *Langley,* 169 Mass. 89, 95. *Commonwealth* v. *O'Brien,* 172 Mass. 248, 254. *Commonwealth* v. *Jacobson,* 260 Mass. 311, 323. G. L. (Ter. Ed.) c. 266, § 30, as amended.

The defendant contends, as stated in his brief, that any statements made by him to the four contributors were "at best expressions of opinion concerning the business of an organization represented not then existing but to be organized in the future." It is clear, however, that his statements concerning the present accumulation of a fund for the purpose of forming an investment trust were statements of fact. Further, the representations that the moneys contributed were to be invested in this fund were statements of fact as to the intention of those collecting for the fund. *Commonwealth* v. *Walker,* 108 Mass. 309. *Commonwealth* v. *Morrison,* 252 Mass. 116, 122. *Commonwealth* v. *McKnight,* 289 Mass. 530. *Commonwealth* v. *McHugh,* 316 Mass. 15. The assertions of the defendant were more than mere seller's talk or expressions of opinion. *Commonwealth* v. *Riches,* 219 Mass. 433. *Commonwealth* v. *Coshnear,* 289 Mass. 516, 522. *Commonwealth* v. *Anthony,* 306 Mass. 470, 474. It was for the jury to say whether the statements were in fact true and whether the defendant honestly believed them to be true. Other than the admissions of the defendant in his testimony, to which reference has been made, there was no direct evidence that an investment trust as described by the defendant was not in process of formation. There are, however, improbabilities in the repre-

sentations made sufficient to warrant a jury in finding the defendant's account as to the contemplated trust to be false. As was said in *Commonwealth* v. *Farmer*, 218 Mass. 507, 511, the "representations showed on their face inherent indications of improbability. When brought to the test of common sense they appear fantastical and visionary. They challenge the credulity of ordinary people . . .." Exceptions numbered 41 to 49, inclusive, which are to the denial of motions for the direction of verdicts of not guilty on the counts on which the jury returned verdicts of guilty, cannot be sustained.

Exceptions 10, 35, and 37 to 40, inclusive, appear not to have been argued and are treated as waived. *Commonwealth* v. *Riley*, 210 Mass. 387, 396.

Thirty-six exceptions were taken by the defendant to the admission or exclusion of evidence. Exceptions numbered 3, 9, 11, 12, 13, 14, 18, 22, and 25 are to the allowance of questions which do not appear to have been answered.

Exceptions numbered 1, 4, 15, 16, 17, 19, 20, 21, 23, 24, 26 to 34, inclusive, and 36 relate to evidence admitted over the defendant's objection which it is contended "is not directly or closely related to the charges as set out in the Commonwealth's indictments and bills of specifications." Exception 1 is to the admission of testimony by Leland that sometime after March 9, 1943, the defendant said to him that "he thought we group of investors would be taken to England at the expense of the investment trust." This statement is not specifically set forth in the Commonwealth's particulars, but such particulars are not designed to inform the defendant of all of the evidence which may be introduced in support of the Commonwealth's case. All that the defendant is entitled to as of right is to such particulars "as might be necessary to give him and the court 'reasonable knowledge of the nature and grounds of the crime charged.'" *Commonwealth* v. *Lammi*, 310 Mass. 159, 161. See also *Commonwealth* v. *Robertson*, 162 Mass. 90, 96; *Commonwealth* v. *Jordan*, 207 Mass. 259, 265; *Commonwealth* v. *Hayes*, 311 Mass. 21, 25. Exception 4 is to

the admission of a paper which the defendant had caused to be drawn up and which was signed by Miss DaCosta directing "the funds placed with you" (Green) to be paid to certain named persons in the event of Miss DaCosta's death. The paper was material as containing an implied admission by the defendant that funds of Miss DaCosta had been placed with him. It was an incidental item of evidence which need not have been particularized by the Commonwealth. Exceptions 15, 16, 17, 19, 20, 21, 23, 24, 26 to 34, inclusive, and 36 concern the cross-examination of the defendant concerning payments made by him to one Irving Sawyer. The defendant had testified that all moneys received by him, other than what was retained by way of commission, were paid over to Hunt. He had admitted receiving $500 from Leland on May 2, 1945, and $1,000 from Bennett on July 17, 1945. He was examined by the district attorney as to whether in each instance he had not thereafter paid over $500 of the moneys so received to Sawyer in repayment of moneys previously contributed by Sawyer to the investment trust. This inquiry was pertinent to the contention of the defendant that all moneys were paid by him to Hunt and concerned a matter which need not have been stated in the Commonwealth's particulars.

Exception 2 relates to the admission of testimony by Leland that the defendant, in 1940 and 1941 when certain checks were given him by Leland, said "that my returns would be well rewarded." While this alleged statement was made two or more years before March, 1943, when the first payment by Leland to the defendant which is set forth in the indictment was made, and more than six years before the return of the indictments, the statement was admissible as preliminary to what later took place between Leland and the defendant. The judge in his charge made it clear to the jury that this testimony was not to be considered as a misrepresentation on which any charge contained in the indictments could be based.

As to exceptions 5 and 6, there was no error in allowing Bennett to testify that in 1943 and 1944 he asked the de-

fendant for the return of money invested by him previous
to those years.

Exceptions 7 and 8 are to the exclusion of evidence by
the defendant as to his state of mind and his intent in con-
nection with certain of the transactions with which he is
charged. If there was error in such exclusion, it was cured
later by the defendant being allowed to testify fully as to
his state of mind and his belief in the truth of his repre-
sentations.

We find no error in reference to any of the matters to
which exceptions were reserved.

*Exceptions overruled.*