COMMONWEALTH *vs.* ANTHONY C. BARRASSO.

Suffolk.    May 1, 1961. — June 6, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, KIRK, & SPIEGEL, JJ.

*Larceny.   False Pretences.   Evidence,* Relevancy and materiality.   *Practice, Criminal,* New trial, Conduct of district attorney, Requests, rulings and instructions.

Evidence at a criminal trial warranted a conviction of the defendant of larceny by obtaining money by false pretences within G. L. c. 266, § 30, through making false representations to another person that a "deal" of leasing a night club, previously discussed between them, was "in the final stages," that an immediate deposit was necessary, and that the lease would be given when the deposit was made, which misrepresentations were intended by the defendant to be relied on by the other person and were relied on by him in turning over money to the defendant. [683]

At a criminal trial involving the issue of the defendant's obtaining money from another person by false pretences, there was no error in permitting the prosecutor to ask the other person whether, at a time when the defendant gave him a promissory note for the money some days after obtaining it from him, anything was said between them "with regard to borrowing or lending any money."   [683]

Upon a motion for a new trial of an indictment, there was no error in denying requests for rulings based on assumed facts which the judge was not required to find.   [684–685]

INDICTMENT found and returned on May 5, 1960.

The case was tried in the Superior Court before *Taveira, J.*

*Jerome D. Goodman,* for the defendant.

*John F. Mulhern,* Assistant District Attorney, for the Commonwealth.

WILLIAMS, J.   The defendant was found guilty on an indictment charging him with stealing on November 5, 1959, money "of the amount and of the value in all of six thou-

sand dollars, of the property of one John Judson Phillips.''
He was sentenced for a term of from three to five years in
the Massachusetts Correctional Institution at Walpole; the
sentence was suspended and he was placed on probation.
The case is here on his exceptions to the denial of a motion
for the direction of a verdict of not guilty, to a ruling on
evidence, and to the denial of his motion for a new trial.

There was evidence that Phillips was a musician em-
ployed in Washington, D. C. He first met the defendant
through a mutual friend who informed him that the de-
fendant had experience in the night club business. On
November 4, 1959, Phillips and the defendant discussed the
possibilities of entering into a business arrangement and
the leasing of a night club in Boston known as the ''Chan-
tilly Lounge.'' The defendant told Phillips that he and
two others had been negotiating for the lease of the lounge
and that Phillips ''may be substituted'' in place of one of
the others. On that evening Phillips went with the de-
fendant and another person to the lounge and Phillips was
introduced to one Murphy, the proprietor. On the next
day, Thursday, November 5, the defendant informed Phil-
lips over the telephone that the third party had been elimin-
ated and asked him to send him, the defendant, a check for
$6,000. He said that ''the lease had not been signed but
the deal was in the final stages and that the deposit had
to be put up on Friday, that Phillips had to get the money
to him right away, and that the lease would be signed when
the deposit was made.'' In reliance on these statements
Phillips sent the defendant a check for $6,000.

Phillips returned to Washington on November 6 and re-
ceived a telephone call from the defendant telling him that
the Chantilly deal had fallen through at the last minute;
that he had some ''other deals on the fire and that he would
like to keep the $6,000.'' Phillips told him ''that if he were
to keep the money, he would have to put it in an escrow
account in my name and get a receipt and that I would
want some kind of a telegram as a receipt for it.'' The
defendant sent him a telegram ''Am holding money as au-

thorized by you to be used at discretion to negotiate for liquor license or night club.'' On November 10 Phillips met the defendant in Boston. The defendant showed him an escrow receipt for $5,000 and said he had made a $1,000 deposit on the ''Celebrity Lounge'' in Lowell. The same evening Phillips visited the Celebrity Lounge with the defendant, met a man who claimed to be the proprietor, and thinking that ''The whole situation seemed very unhealthy . . . decided it was time to get my money back.'' The defendant said he would return the money but that it was ''too late in the evening and that they would talk about it in the morning.'' On November 11 Phillips tried to reach the escrow man, who was the attorney of the defendant, and learned that he was away and would not be back until Monday, November 16. Phillips told the defendant that he had to return to Washington and agreed to take a promissory note for the money, payable on November 17, ''the day after . . . [the escrow man] returned.'' The ''idea of the note originated with'' the defendant. A note was drawn by an attorney for $5,900 to allow $100 for the fees of the escrow man. It was arranged that the defendant was to pick up the money on the sixteenth and that he would mail it to Phillips on the seventeenth, the date on which the note was payable. Phillips received no part of the money.

The note given to Phillips by the defendant, dated November 12, 1959, recited, ''It is expressly understood that acceptance of this note by John Judson Philips releases the said Barrasso from and renders null and void, any, and all agreements, contracts, promises, oral or written, between Anthony G. Barrasso and John Judson Philips from the beginning of time to the present.''

Murphy, the proprietor of the Chantilly Lounge, testified that although he had conversations with the defendant regarding the leasing of the lounge, ''he never had any concrete deal and had no financial arrangements with him.'' In their talks he, Murphy, was referring to a part of the lounge and the defendant the whole lounge and ''because of this discrepancy the deal was off.''

There was no error in denying the motion for a directed verdict of not guilty. The larceny of which the defendant was convicted was that of obtaining money by false pretences. G. L. c. 266, § 30. To constitute this offence the Commonwealth must prove that the defendant made a false statement known or believed by him to be false with the intent that the person to whom it was made should rely upon its truth and that this person did rely upon it as true and as a result of his reliance parted with personal property. *Commonwealth* v. *Green,* 326 Mass. 344, 348, and cases cited. *Commonwealth* v. *King,* 202 Mass. 379, 393.

The jury could find that the defendant misrepresented to Phillips the state of the negotiations with Murphy; that the deal was not in the final stages; and that no deposit was required by Friday. They could find that these statements were made to induce Phillips to turn over to the defendant $6,000. It could not be ruled that the transaction was intended by either party to be merely a loan. See *Commonwealth* v. *Anthony,* 306 Mass. 470, 475; *Commonwealth* v. *Leland,* 311 Mass. 447, 452–453; *Commonwealth* v. *Althause,* 207 Mass. 32, 48. The evidence as to the subsequent intercourse of the defendant with Phillips, if believed, tended strongly to show a scheme by the defendant to defraud Phillips.

During the course of the trial Phillips was asked by the assistant district attorney, subject to the defendant's exception, "At the time that the defendant gave you the promissory note that is now in evidence, was there anything said at that time between you and the defendant with regard to borrowing or lending any money?" After colloquy of court and counsel the witness answered "Not strictly a loan." "I was letting the defendant keep the money until the escrow man's return. In that sense it was a loan. It was not a loan in the sense that I meant to let him use the money for any negotiations beyond that date." The question was properly admitted. No exception was taken to the answer.

The defendant filed a motion for a new trial on the

grounds that the verdict was against the evidence and the weight of the evidence; that the assistant district attorney during the trial committed an act that tended to prejudice the jury against the defendant; and that the court also committed a prejudicial act. At the hearing on the motion the defendant presented nine requests for rulings, all of which as well as the motion for a new trial were denied.

The only matter relied upon by the defendant which might not have been the subject of an exception at the trial (see *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 24–25) was that relating to the alleged prejudicial act of the assistant district attorney. One Palauskas testified that he was in the court room during the entire trial and saw in the hands of the assistant district attorney, while examining Phillips, a photograph showing the front and side view of the defendant's face, such as commonly is to be found in the police records of a criminal, and that he held the photograph in a manner that would be within the vision of the jury. In arguing the motion the assistant district attorney said "we have evidence that at all times I held the picture at the end of the jury box, that at no time did I come from the end of the jury box toward the middle of the jury box, that if the picture was seen by any members of the jury it could have been seen only by those jurymen at the end of the box."

The defendant requested the following rulings in reference to this incident: "5. That by the admission of the district attorney (assistant) that as he was examining the government witness, he held before the jury and within its full view a picture of the defendant of both the front and the side view, he was committing an act which was prejudicial to the right of the defendant to have the jury consider him innocent until he be proven guilty." "6. That the act of the assistant district attorney in committing something which created or could have created any prejudice in the minds of the jury was prejudicial to the defendant during the trial and was not in the interest of justice to the defendant."

While the statement of the assistant district attorney seems impliedly to concede that he held the picture in his hand while examining the witness it does not amount to an admission of the facts on which request 5 was predicated. Both requests 5 and 6 were based upon assumptions of fact which the judge may not have found. "[W]here a request assumes a disputed fact, instead of stating it hypothetically, the party presenting the request goes beyond his right to a ruling of law, and asks also an implied finding of fact which the judge is not required to make." *Liberatore* v. *Framingham,* 315 Mass. 538, 543. There was no error in denying requests 5 and 6.

During the trial the judge was in a position to observe whether the picture was in fact held by the assistant district attorney in such manner that it was brought to the attention of the jury. It cannot be said that he was wrong in refusing to allow the motion for a new trial.

*Exceptions overruled.*