COMMONWEALTH *vs.* LOUIS CONSTRUCTION CO., INC.
(and six companion cases[1]).

Suffolk.   November 6, 1961. — February 12, 1962.

Present: WILKINS, C.J., WILLIAMS, WHITTEMORE, CUTTER,
& SPIEGEL, JJ.

*Larceny.   False Pretences.   Perjury.   Public Works.*

At the trial of indictments against a corporation and one who was its president, treasurer and sole stockholder for larcenies by false pretences from the Commonwealth arising out of the emergency employment by the metropolitan district commission of the corporate defendant on a not unreasonable cost plus basis to dismantle and store a summer theatre tent, a finding of intent to defraud on the part of the defendants and verdicts of guilty were not warranted by evidence respecting bills for costs submitted to the commission by the defendant corporation and paid by the Commonwealth which included two different bills for the same labor, a bill for the fire insurance premium on the tent correct when submitted but subsequently adjusted to a reduced amount without the commission being notified of the reduction, and a bill for storage of the tent correct in amount but naming a storage firm other than the one with which the corporate defendant actually stored the tent and to which it paid that amount.   [605–606]

At the trial of an indictment under G. L. c. 268, § 1, charging the defendant with perjury as a witness before a committee of the Massachusetts Senate authorized to make an investigation and study of the administration of the metropolitan district commission, "with particular reference to the awarding of contracts, the purchase of supplies and

---

[1] Louis Construction Co., Inc., is the defendant in three companion cases and Louis Recine in three companion cases.

materials and the hiring of labor," evidence merely of a false statement to the committee by the defendant as to the place of storage of a summer theatre tent of the commission which his company had dismantled and stored under a contract with the commission, without proof of the materiality of the false statement to any matter then under investigation by the committee, did not warrant a verdict of guilty. [606–607]

SEVEN INDICTMENTS, found and returned on December 9, 1960.

The cases were tried in the Superior Court before *Meagher, J.*

*Jackson J. Holtz,* (*L. Johnson Callas* with him,) for the defendants.

*Joseph T. Doyle,* Assistant Attorney General, (*Theodore R. Stanley,* Assistant Attorney General, with him,) for the Commonwealth.

WILLIAMS, J. The corporate defendant Louis Construction Co., Inc., has been found guilty on four indictments numbered 786, 787, 788, and 793 of 1961, each charging larceny from the Commonwealth of Massachusetts. The defendant Louis Recine, president and treasurer of the corporate defendant, has been found guilty on two indictments numbered 789 and 790 of 1961, charging the same larcenies from the Commonwealth set forth respectively in indictments 793 and 786 against the corporation. Louis Recine has also been found guilty on an indictment numbered 791 charging him with perjury in a hearing before an investigating committee of the Massachusetts Senate. The cases are before us, after the imposition of sentences, upon the appeals of each defendant accompanied by assignments of error, a summary of the record, and a transcript of the evidence pursuant to G. L. c. 278, §§ 33A–33G, as amended. The indictments were tried together before a jury.

There was evidence, substantially undisputed, as follows. The metropolitan district commission maintained an art center on Soldiers Field Road in Brighton. In September, 1959, the defendant Louis Construction Co., Inc. (Louis), of which the defendant Louis Recine was sole stockholder, was engaged in a landscaping project for the commission in connection with the art center. The commission, because

of a threatened hurricane, employed it on a cost plus 16% basis to dismantle the center's "summer tent theatre roof," hereinafter referred to as "the tent," and store it until the next season in May, 1960. It was an emergency job requiring the speedy assembling of riggers and laborers. Louis took down the tent in two days (September 29—October 1) and stored it with a firm called Robbins & Burke, Inc., in Cambridge. On or about October 12, it submitted bills or vouchers to the commission for its costs. These bills included charges for labor, insurance, and storage. The bills were annexed to a so called "standard invoice" by the commission and forwarded by it to the Comptroller for the Commonwealth. Additional supporting vouchers were required by him and certain charges were disapproved. The invoice was finally approved early in June, 1960, after a conference of Recine with the deputy comptroller and the agent for the commission. It amounted to $7,173.45 and with the addition of 16% totaled $8,321.20. This sum was paid to Louis by check of the Treasurer of the Commonwealth dated June 30, 1960.

On July 25, the Massachusetts Senate voted an order that a special committee be appointed for the purpose of making an investigation and study of the administration of the metropolitan district commission, "with particular reference to the awarding of contracts, the purchase of supplies and materials and the hiring of labor." Recine was called as a witness and testified under oath on September 15. He was asked if he had the tent stored with a friend of his at Boxboro and answered "yes."

In December, 1960, the grand jury for Suffolk County returned the indictments on which the defendants have been convicted.

Among the supporting bills supplied by Louis and annexed to the "standard invoice" were (1) a bill of Geo. T. Hoyt Company in the sum of $112 for labor; (2) four items in a bill of Louis totaling $124.55 for the labor of Henry Donavan and John Campbell; (3) a bill of John C. McDonald and Co. in the sum of $705 for the premium for fire

insurance on the tent; and (4) a bill purporting to be that of Paino-LaCava Contractors, Inc., in the sum of $600 for storage of the tent. These charges and the resulting payment by the Commonwealth were the bases of the four larceny indictments against Louis and the two against Recine.

There was evidence that the Hoyt bill (1) was for the labor of two men for twenty-eight hours at $4 an hour. It later appeared that these two men were Donavan and Campbell who were listed in the bill of Louis (2) for labor as having been paid $62.28 and $62.27, respectively. It is conceded that the Commonwealth paid twice for the labor of these men, once by the payment of the Hoyt bill and again by the payment of the items for labor in the Louis bill. The overpayments were the subject of indictments 787 and 788 against Louis in which it was charged with larceny of less than $100.

The McDonald bill for insurance (3) was dated December 1, 1959. Louis had several policies placed through that agency and on June 8, 1960, McDonald wrote to Louis notifying it that by reason of an adjustment of debits and credits in its insurance account the premium charged for the tent insurance should have been $604.04. The commission was not advised of the error in the premium as billed. Louis and Recine were each charged with larceny of $100.96 in indictment 786 against Louis and 790 against Recine, that being the difference between $705 which the Commonwealth paid on June 30 and the corrected bill of June 8.

The amount of $600 paid by the Commonwealth for storage of the tent in payment of the bill of Paino-LaCava Contractors, Inc. (4) annexed to the standard invoice was the subject of indictment 793 against Louis and indictment 789 against Recine. The tent in fact was not stored with Paino-LaCava but with Robbins & Burke, Inc., in Cambridge who were paid $600 by Louis for the storage. It did not appear how a bill purporting to be from Paino-LaCava came to be annexed to the standard invoice but the Commonwealth only paid Louis the amount which it had actually paid Robbins & Burke for storage.

As to each indictment, the respective defendants assigned as error the denial of a motion for a directed verdict for the defendant. To constitute the crime of larceny by false pretences (G. L. c. 266, § 30), it must appear that there was a false statement of fact known or believed by the defendant to be false made with the intent that the person to whom it was made should rely upon its truth and that such person did rely upon it as true and parted with personal property as a result of such reliance. *Commonwealth* v. *Green,* 326 Mass. 344, 348, and cases cited. *Commonwealth* v. *Greenberg,* 339 Mass. 557, 574–575. *Commonwealth* v. *Barrasso,* 342 Mass. 680, 683. The pretence may be made by implication as well as by verbal declaration, *Commonwealth* v. *Drew,* 19 Pick. 179, 185–186, *Commonwealth* v. *Morrison,* 252 Mass. 116, 122, G. L. c. 277, § 39; and the presentation of a bill for labor or materials may be found to be an implied representation that the charges are correct. *Commonwealth* v. *Mulrey,* 170 Mass. 103, 105–106. *Commonwealth* v. *Anthony,* 306 Mass. 470, 474–475.

The bill for labor presented to the commission by Louis could be found to be a misrepresentation that Louis had paid or was obligated to pay Donavan and Campbell the respective amounts listed in its bill. The bill of McDonald for insurance in the amount of $705 was a correct statement of the premium charge when filed with the commission in December, 1959. If fraud could be found, it was from the failure of Louis after receipt of the letter of June 8 to notify the commission that the amount due for insurance was only $604. Such failure, we think, did not amount to a false representation. At most it gave cause for a civil action for deceit as a concealment of a material fact which the defendant was bound to disclose. See *Kidney* v. *Stoddard,* 7 Met. 252, 254–255; *Windham Mfg. Co.* v. *Boston Blacking Co.* 239 Mass. 123, 126.

It was said in *Commonwealth* v. *Drew, supra,* pp. 184–185, in reference to Rev. Sts. c. 126, § 32, wherein the earlier statutes relating to larceny were revised and combined, that a false pretence within the meaning of the statute is a

"representation of some fact or circumstance, calculated to mislead, which is not true. To give it a criminal character there must be a scienter and a fraudulent intent. Although the language of the statute is very broad, and in a loose and general sense, would extend to every misrepresentation, however absurd or irrational or however easily detected; yet we think the true principles of construction render some restriction indispensable to its proper application to the principles of criminal law . . . ."

"It is not the policy of the law to punish criminally mere private wrongs. And the statute may not regard naked lies, as false pretences. It requires some artifice, some deceptive contrivance, which will be likely to mislead a person or throw him off his guard. . . . [I]t would be inexpedient and unwise to regard every private fraud as a legal crime."

This is not a case where it could be found that in the execution of the contract Louis or Recine entered into a scheme to defraud the Commonwealth. Their services were sought by the commission. It does not appear that the agreed compensation was unreasonable. In carrying out the dismantling they arranged with Hoyt to provide supervisors expert in handling tents. They also employed a gang of riggers and laborers. The tent was taken down in two days and stored. After about a month it was taken to the armory in Boston and cleaned. Insurance against fire was provided. The rates and hours of the laborers employed were kept by a timekeeper for the commission. The duplication of the charges for labor was as consistent with a careless checking of the Louis's and Hoyt's bills as with a calculated attempt to defraud. The charge made for insurance was more than it eventually cost because of a bill from the insurance company which proved to be erroneous. The charge for storage was correct although it could be found that the storage was in a place different from that stated in the bill. No fraud was committed on the Commonwealth as it paid Louis only the amount properly due it for storage. *Commonwealth* v. *McDuffy,* 126 Mass. 467,

471. *Commonwealth* v. *Burton,* 183 Mass. 461, 468. There were reasonable explanations for the errors in the charges although of course the jury was not required to believe them.

It seems to us that viewing the evidence as a whole the jury could not have found an intent to defraud beyond a reasonable doubt. "When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof." *Commonwealth* v. *Carter,* 306 Mass. 141, 147. *Commonwealth* v. *Altenhaus,* 317 Mass. 270, 273–274. "[I]f, upon all the evidence, the question of the guilt of the defendant is left to conjecture or surmise . . . a verdict of guilty cannot stand." *Commonwealth* v. *O'Brien,* 305 Mass. 393, 401.

We think the Commonwealth's remedy is civil and not criminal. Louis and Recine may be obligated to repay to the Commonwealth the amount of the overcharges but it would be unjust to penalize either of them for larceny. See *Commonwealth* v. *Jeffries,* 7 Allen, 548, 567–568.

The indictment of Recine for perjury may be briefly disposed of. The defendant testified at a hearing before a committee of the Senate which was authorized to make an investigation and study of the administration of the metropolitan district commission. The scope of the investigation was somewhat limited by the specification "with particular reference to the awarding of contracts, the purchase of supplies and materials and the hiring of labor." The defendant was asked if he stored the tent for $600 with a friend at Boxboro and he answered "yes." The record discloses no other questions and answers or, except inferentially, the matter under investigation. The crime of perjury is committed by one who "in a proceeding in a course of justice, wilfully swears or affirms falsely in a matter material to the issue or point in question . . . ." G. L. c. 268, § 1. As we have already noted, it was not controverted that the storage charge was $600, and the only falsity of Recine's answer to the interrogation was that the tent

was stored at Boxboro. It did not appear how the place of storage was material to any matter then under investigation. Materiality must not only be alleged but proved by the Commonwealth. *Commonwealth* v. *Pollard,* 12 Met. 225, 228–229. *Commonwealth* v. *Grant,* 116 Mass. 17, 20–21. *Commonwealth* v. *Aronson,* 250 Mass. 521.

The question asked had no apparent relation to the awarding of the dismantling contract, the purchase of supplies and materials, and the hiring of labor. As to the absence of evidence of materiality, it is significant that after they had retired, the jury asked for the transcript of the investigation and were told that it had not been offered by the Commonwealth.

As to each indictment the judgment is reversed and the verdict of the jury set aside.

*So ordered.*