UNITED STATES of America

v.

James B. SELDERS and Elizabeth M. Selders.

United States of America

v.

James F. Vacca, Jr. and Jennifer Vacca.

Civil Action Nos. 08–12109–RWZ, 08–40197–RWZ.

United States District Court, D. Massachusetts.

Aug. 17, 2009.

Alan M. Shapiro, James E. Brown, Julie C. Avetta, U.S. Department of Justice, Washington, DC, for United States of America.

R. Arlen Johnson, Milford, MA, for James F. Vacca, Jr. and Jennifer Vacca.

Peter L. Banis, Boston, MA, for James B. Selders.

John Drew, Joshua N. Cook, Burns & Levinson LLP, Peter L. Banis, Boston, MA, for Elizabeth M. Selders.

### MEMORANDUM OF DECISION

ZOBEL, District Judge.

In these consolidated cases, the United States seeks the return of monies it refunded to defendants after they recharacterized certain investment losses for tax years 2000 and 2003 as theft losses. The matter is before me on the parties' cross-motions for summary judgment.

## I. Factual Background

### A. Undisputed Facts

Both James B. Selders ("Selders," jointly with his wife "the Selders") and James F. Vacca ("Vacca," jointly with his wife "the Vaccas") worked for Microsoft Corp. during the 1990s and received non-qualified options to purchase company stock as part of their compensation. By 2000, they both maintained investment accounts managed by Lawrence Hurst ("Hurst") at the investment firm Merrill Lynch Pierce Fenner and Smith, Inc. ("Merrill"). Early that year, both exercised some or all of their available options but did not sell any of the redeemed shares. Rather, they borrowed against their account balances to pay the cost of the stock and the tax due on the difference between the exercise and market price. Merrill charged defendants interest on the outstanding loan balances and a fee for maintaining the accounts based on the value of assets in the account. During the second half of 2000, the price of Microsoft stock (and that of other technology stocks) dropped significantly and defendants incurred substantial losses in their investment accounts by year's end.

Defendants, along with a number of other similarly situated Microsoft employees, claimed arbitration against Merrill and Hurst contending that their losses were a result of "a pattern of misrepresentations, gross negligence and mismanagement in recommending and implementing the over-concentration of Claimants' accounts in a single stock, and the excessive margining of those accounts." (Docket # 22, Ex. A.) In particular, they accused Hurst of recommending the exercise-and-hold strategy, which generated interest and fees to Mer-

rill, to increase his personal compensation, not because it was beneficial to them. Merrill settled the arbitration in 2003 without admitting fault. The Selders and the Vaccas each received approximately 17% to 18% of their claimed loss.

Both the Selders and the Vaccas [1] initially treated their investment losses as capital losses on their respective federal tax returns. Capital losses are only deductible against ordinary income in the amount of $3,000 per year. Under IRS regulations, theft losses are not similarly limited. In 2006, defendants filed amended returns for the tax years 2000 and 2003 which recharacterized the uncompensated losses as due to theft and claimed large refunds for excess taxes paid, which amounts the IRS refunded. The United States then initiated these parallel actions, asserting that defendants' losses do not meet the regulatory requirement for a theft loss and seeking return of the refunded amounts. (*See* Docket 08–12109 # 1; Docket 08–40197 # 1.)

#### B. Disputed Facts

Defendants contend that Hurst failed to disclose the risks inherent in the exercise-and-hold strategy, over-concentrated their accounts in Microsoft stock and gave improper tax advice in order to increase his compensation and to protect his personal position in Microsoft stock. The Selders argue that this constitutes theft under Washington state law and that, under that law, the loss to the victim does not have to equal the gain to the thief; therefore, they may deduct the loss in market value of their stock as a theft loss on their federal tax return. The Vaccas make similar arguments applying the laws of the Commonwealth of Massachusetts.

The government disputes some of the basic facts as to the date Selders exercised his options and the origins of his relationship with Hurst. It also contests certain representations that Selders and Vacca allege Hurst made to them. Further, it asserts that Hurst did not have the ability to trade in defendants' accounts without permission and that he fully disclosed all the options and risks of the choices available to defendants in connection with their exercising the stock options. It notes that Selders made his own trading decisions and that Hurst avers that he "never intended to deprive the Selderses of property." (Docket 08–12109 # 26, ¶ G.) Finally, it argues that under the relevant states' laws, defendants' realized losses due to change in market value cannot be considered theft losses even under the facts as alleged by defendants.

### II. Procedural Posture

Because the question of whether the facts as alleged by defendants could constitute theft under IRS regulations is potentially dispositive, on March 4, 2009, the court ordered an abbreviated briefing schedule with limited discovery on that issue. The United States moves for summary judgment in both cases (Docket 08–12109 # 16; Docket 08–40197 # 15), as do the Selders (Docket 08–12109 # 18) and the Vaccas (Docket 08–40197 # # 13, 18).[2] The Selders also move for leave to file a response to statements made during oral argument, contending that government concessions made at the summary judgment hearing support their argument that a theft occurred. (Docket 08–12109 # 31.)

---

1. Defendants filed joint returns in the years in question, so both spouses are named as defendants in each case.

2. Docket # 18 is a corrected version of the Vaccas' motion # 13, which apparently was corrupted during upload to the electronic docketing system.

## III. Legal Standard

Summary judgment should be granted when the facts properly supported by "the pleadings, the discovery and disclosure materials on file, and any affidavits" and taken in the light most favorable to the non-moving party "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "Once the moving party avers an absence of evidence to support the non-moving party's case, the non-moving party must offer definite, competent evidence to rebut the motion." *Meuser v. Fed. Express Corp.*, 564 F.3d 507, 515 (1st Cir. 2009) (internal quotation marks and citation omitted).

## IV. Discussion

### A. IRS Regulations Concerning Loss Deductions

■ The parties agree that under section 165 of the Internal Revenue Code, a taxpayer may take a deduction for a loss arising from theft which is not subject to the normal limitations on deductions for losses sustained on sales of capital assets. *See* 26 U.S.C. § 165. In addition, they agree that the term "theft" is to be interpreted broadly to include "any criminal appropriation of another's property to the use of the taker, particularly including theft by swindling, false pretenses, and any other form of guile." (Docket 08–12109 # 17, 4) (quoting *Edwards v. Bromberg*, 232 F.2d 107, 110 (5th Cir.1956).) Whether particular conduct amounts to theft is determined by state law. The Selders' case is governed by Washington state law, the Vaccas' by Massachusetts law.

### B. Analysis of The Selders' Losses Under Washington Law

■ Under Washington state law, "theft" means, *inter alia*, "[b]y color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services...." Wash. Rev.Code § 9A.56.020(1)(b). " 'Obtain control over,' in addition to its common meaning, means: [i]n relation to property, to bring about a transfer or purported transfer to the obtainer or another of a legally recognized interest in the property...." *Id.* § 9A.56.020(1)(a). The Washington courts have held that an intent to permanently deprive is not required to convict a defendant of theft by deception. *See State v. Vargas*, 37 Wash.App. 780, 683 P.2d 234, 236 (1984), *overruled in part on other grounds by State v. Linehan*, 147 Wash.2d 638, 56 P.3d 542, 547 (2002).

The Selders argue that "Hurst and Merrill Lynch, through deception and subterfuge, effectively seized control of the Selders' account and abused it to Hurst and Merrill Lynch's benefit" and that this constitutes theft. (Docket 08–12109 # 20, 9.) At oral argument, the government conceded that margin interest and fees paid by the Selders to maintain their account could amount to theft if Hurst and Merrill fraudulently deceived them into acquiescing to the exercise-and-hold strategy. However, the government disputes that any losses due to the change in market value of the underlying stock in the account may be characterized as theft losses.

On its face, the Selders' capital loss does not meet the definition of theft under Washington law. Hurst never obtained control over the securities in the account; rather, the Selders retained ownership of the account and had the ability to sell the securities therewithin at any time. Indeed, in their arbitration Statement of Claim, the Selders averred that they did just that: "[l]acking investment knowledge and receiving no advice [from Hurst], Jim

[Selders] sold Microsoft stock and purchased the stock of other companies which he had heard of" in September 2000. (Docket 08–12109 # 22, Ex. A, 46.) Disposition of property by its owner is not theft. *See State v. Pike*, 118 Wash.2d 585, 826 P.2d 152, 154 (1992). Furthermore, there is no evidence that Hurst intended to deprive the Selders of any of the securities in their account or the value of those securities. *See State v. Delcambre*, 116 Wash.2d 444, 805 P.2d 233, 234 (1991) (noting that an "intent to deprive" is an essential element of theft). Rather, defendants can and do only allege that Merrill and Hurst deceived them in order to obtain fees and margin interest.

Nevertheless, the Selders argue that in deception cases the amount of the theft is not what the perpetrator gained, but what the victim lost, citing to *State v. George*, 132 Wash.App. 654, 133 P.3d 487, 491 (2006). Then, relying on *Jeppsen v. Comm.*, 128 F.3d 1410 (10th Cir.1997), they assert that in securities cases the loss is measured by the change in the market value of the account at the time the taxpayer reacquires control of it. Defendants, however, misread *George*, and *Jeppsen* is not applicable on these facts.

In *George*, the defendants misrepresented the prior ownership and mileage of a truck they sold to an undercover police officer for $5,500. They were charged with attempted theft in the first degree, which requires that the state prove attempted theft of property which exceeds $1,500 in value. The defendants argued that the amount of deprivation was $5,500 less the market value of the truck, *i.e.*, the net loss to the victim. Since the state had offered no evidence on the latter, they asserted that it had failed to prove theft in the first degree. *See George*, 133 P.3d at 490–91. The court held that "in deception cases, the statute ... looks only to the value of the property obtained, not the net result of the exchange" to "establish the value element of attempted theft in the first degree." *Id.* at 491. It found the defendants had attempted to obtain a valid cashier's check for $5,500, well in excess of the statutory threshold. *Id.* The court explicitly rejected the contention that the victim's net loss was relevant to a determination of the amount of theft loss under the Washington statute. *See id.* ("We do not believe the legislature intended an inquiry into the thief's net gain or the victim's net loss once the fact of a deprivation is established.").[3]

In *Jeppsen*, a securities broker with E.F. Hutten Group brokerage established Jeppsen's account as a discretionary account without permission and fraudulently obtained his signature to trade on margin. He then proceeded to "churn" the account by purchasing and selling call options without authorization and investing in penny stocks whose price he and an accomplice manipulated through repeated purchases and sales. When Jeppsen became aware of these activities, he ordered the broker to close his account. The broker ignored these instructions and continued to trade in the account. After multiple requests to close the account, the broker slowly began to liquidate to cash the balance of the account, forging Jeppsen's signature to hide his sale of certain high risk invest-

---

**3.** It appears that the Selders may be relying on dicta in *George* discussing the Washington Supreme Court's holding in *State v. Lee*, 128 Wash.2d 151, 904 P.2d 1143 (1995), to support their claim that under state law "once a theft by deception is established ..., the amount of the theft is not just what the perpe-trator gained but what the victim lost." (Docket 08–12109 # 31, 2.) However, the *George* court noted that the issue decided in *Lee* "was whether the evidence established the underpinning deprivation," not "the degree of theft or the value of the property obtained thereby." *George*, 133 P.3d at 491.

ments that he had never been authorized to purchase. On Black Monday, October 19, 1987, Jeppsen sustained approximately $194,000 of market losses because the broker had not yet fully liquidated the account. On his 1987 federal tax return, Jeppsen claimed a theft loss relating to these market losses. The IRS disallowed the deduction on the ground that Jeppsen had retained counsel and had a reasonable prospect of recovering his loss as of the close of 1987. *Jeppsen*, 128 F.3d at 1413. The United States Tax Court sustained the disallowance and the Tenth Circuit Court of Appeals affirmed. *Id.* at 1414, 1419.

The Selders appear to rely on the unstated implication in *Jeppsen* that the IRS and appellate court would have allowed Jeppsen to deduct his trading losses as a theft loss if, on December 31, 1987, he had not had any possibility of recovering those losses. This is far too slender a thread on which to hang the broad principle they espouse that "[i]n a securities case, the loss is measured by the value of the account at the time the perpetrating broker acquires 'control' of the account to the time [ ] the account owner/taxpayer re-acquires control." (Docket 08–12109 # 20, 8.) Rather, at best *Jeppsen* suggests that where a broker, without permission, using forgery and fraud and against the explicit instructions of the account holder, causes market losses by continuing to buy and sell risky securities even when explicitly instructed to cease such activity, the taxpayer may be able to claim those market losses as a theft loss. In contrast, Hurst did not have discretion to trade in the Selders' account without their permission, nor is there an allegation that he made any of the trades

that led to their losses without their knowledge. Thus, *Jeppsen* is inapropos.

Therefore, while the interest and fees the Selders paid on their Merrill account may be theft losses, the losses due to changes in market value of the securities held in the account are not. For that reason, the government's motion is allowed with respect to capital losses. It is denied to the extent that the claimed losses represent payments of interest and fees and not capital losses.[4] Even as to payments of interest and fees, however, there is a question whether Hurst and Merrill properly disclosed the benefits and risks of the exercise-and-hold strategy to defendants and whether Hurst possessed the requisite intent necessary to comprise theft under Washington state law. The Selders' motion for summary judgment on these amounts is therefore denied.

### C. Analysis of The Vaccas' Losses Under Massachusetts Law

██ The Vaccas fare no better under Massachusetts law. The Commonwealth's larceny statute, Mass. Gen. Laws ch. 266, § 30, prohibits, *inter alia*, obtaining the property of another by a false pretense with intent to defraud. The elements of larceny by false pretenses are: "(1) that a false statement of fact was made; (2) that the defendant knew or believed the statement to be false when he made it; (3) that the defendant intended that the person to whom he made the false statement would rely on it; and (4) that the person to whom the false statement was made did rely on it and, consequently, parted with property."[5]

---

4. The distribution of the claimed theft losses between capital losses and fees and interest paid to Merrill is unclear and remains as a question of fact to be determined.

5. The Vaccas cite only to the Commonwealth's securities statutes in their motion for

summary judgment. (*See* Docket # 18, 5–6, 8.) However, whether or not Hurst violated securities regulations is not relevant to the question whether the change in market value of the Vaccas' securities constitutes a theft under state law.

*Commonwealth v. Lewis,* 48 Mass.App.Ct. 343, 720 N.E.2d 818, 825 (1999) (quoting *Commonwealth v. Reske,* 43 Mass.App.Ct. 522, 684 N.E.2d 631, 632 (1997)). As in Washington, a defendant may be guilty of the offense even if the property is later returned. *See id.* at 822 n. 2.

Not only is there no evidence that Hurst made false statements which he intended the Vaccas to rely on in order to obtain their stock, the evidence is undisputed that they never parted with control over the securities in their account. In their Statement of Claim in the prior securities arbitration, they assert that:

> [f]inally, in mid April and May 2000, when Hurst would no longer return their phone calls and the accounts continued to precipitously fall in value, the *Vaccas liquidated all of their Microsoft stock.* In May 2000, *the Vaccas decided to transfer their remaining assets away from Hurst* . . . .

(Docket 08–40197 # 13, Ex. A, 55 (emphasis added).) Thus, viewing the evidence in the light most favorable to defendants, Hurst's false representations were intended to cause the Vaccas to part with the interest and fees paid on the account, not the securities held within the account.

The Vaccas do not appear to dispute this conclusion. While they assert that "the payments to Hurst and Merrill of margin interest and management fees is no less a theft when done by fraud and misrepresentations than if done at gun point," they argue only that the capital losses enter the "realm of theft" due to the "intervening existence of fraud, deceit, misrepresentations, false pretenses, and many other forms of guile." (Docket 08–40197 # 18, 9–10.) Such proximate cause is not a feature of the Massachusetts larceny statute; rather, larceny by false pretenses requires that person to which the false statement is made "part[ ] with personal property as a result of [ ] reliance [on the misrepresenta-

tion]." *E.g., Commonwealth v. Greenberg,* 339 Mass. 557, 160 N.E.2d 181, 193 (1959); *see also Elect. Picture Solutions, Inc. v. C.I.R.,* T.C. Memo. 2008–212, *available* at 2008 WL 4132050, at *2 (U.S.Tax Ct.2008) (disallowing theft loss for change in market value of stock and noting that even if stockbroker made false misrepresentations concerning that stock, he had not appropriated petitioner's property, an "essential element" of California's law of theft by false pretenses). Here, the Vaccas, like the Selders, never gave up their stock to Hurst. At most, they may be able to deduct interest and fees paid to Merrill as theft losses. But even that deduction requires a determination that Hurst misrepresented the safety of the exercise-and-hold investment strategy and that he had, at the time, the necessary intent to commit theft under Massachusetts law. *See Commonwealth v. Louis Constr. Co.,* 343 Mass. 600, 180 N.E.2d 83, 86–87 (1962) (holding that misrepresentation without an intent to defraud could not support a conviction of larceny by false pretenses).

## V. Conclusion

Accordingly, the United States' motions for summary judgment (Docket 08–12109 # 18; Docket 08–40197 # 15) are ALLOWED to the extent that the amounts claimed as theft losses are the result of losses due to the sale of securities. The motions are DENIED for amounts claimed as theft losses that represent interest and fees paid to Merrill.

Defendants' motions for summary judgment (Docket 08–2109 # 16; Docket 08–40197 # # 13, 18) are DENIED. The Selders' motion for leave to file a response to statements made during oral argument (Docket 08–2109 # 31) is ALLOWED.